CRAIG, EXECUTRIX *v.* CITIZENS TRUST COMPANY ET AL.

[No. 27,419. Filed May 6, 1940. Rehearing denied September 18, 1940.]

436

*Samuel E. Cook* and *Homer E. Bailey*, both of Huntington, for appellant.

*Bowers, Feightner & Bowers* and *Arthur J. Palmer*, all of Huntington; and *Eggeman, Reed & Cleland*, of Fort Wayne, for appellees.

SWAIM, J.—This was an action for the conversion of certain cash and bonds brought by Harriet I. Craig, as executrix of the last will and testament of her brother, Sidney P. Craig, deceased, against the Citizens Trust Company and Allen County Building & Loan Association. The complaint alleged that, at the time of his death, decedent had on deposit in said trust company in a savings account $8,800.00 and $22,000.00 of negotiable real estate bonds; that the defendants failed and refused to deliver said cash and bonds to said plaintiff and that said defendant, Citizens Trust Company, wrongfully converted, to its own use, real estate bonds belonging to said estate of the value of $11,000.00 and

cash in the sum of $5,084.22. The defendant, Citizens Trust Company, filed an answer in general denial and a second paragraph alleging payment and satisfaction. At the close of all of the evidence, on motion of the plaintiff, the action was dismissed as to the defendant, Allen County Building & Loan Association. The jury returned a general verdict for the defendant, Citizens Trust Company, and judgment, accordingly, was entered thereon.

.The sole error assigned is based on the action of the court in overruling the motion for a new trial. The first ground therefor, discussed by the appellant, is that the verdict of the jury is not sustained by sufficient evidence. Under her points and authorities as to said ground plaintiff sets out numerous abstract statements of law without showing their application to the facts of this case, and very little attempt is made to point out to the court any specific deficiencies in the evidence.

In determining the sufficiency of the evidence to support the verdict on appeal we will consider only the evidence most favorable to the appellee. *New York Cent. R. R. Co.* v. *Thompson* (1939), 215 Ind. 652, 21 N. E. (2d) 625. It was admitted by both parties that after the death of the appellant's brother, Sidney P. Craig, the appellee issued a real estate bond to the appellant in the principal sum of $25,000.00; and that part of the consideration for said bond were bonds in the principal amount of $11,000.00, which had belonged to the appellant's brother and had been left in the custody of the appellee. It was also admitted that an additional amount of $3,715.78 which said decedent had on deposit was included as a part of the consideration for the $25,000.00 bond. Photographic copies of the ledger sheets of said account, which were introduced in evidence, showed that

$3,715.78 was the correct amount of the decedent's deposit balance at the time of his death. While appellant insists that this deposit was in the appellee trust company, the appellee introduced evidence tending to show that this deposit balance was in a savings account which the decedent was carrying in the Allen County Building & Loan Association. The appellant testified that after her brother died his safety deposit box was opened and that her lawyer said it contained a memorandum listing bonds in the total face amount .of $22,000.00. There was no evidence, however, to show who had made such memorandum. Appellant also testified that there was a list of bonds in the back of her brother's passbook in the handwriting of the employees of the appellee; that this list also showed bonds in the total amount of $22,000.00; and that the deposit account, as revealed by said passbook showed a balance of something over. $13,000.00. The appellant's entire case was based on the contention that the appellee was bound to account for (1) the amount of bonds which she said the memorandum in the safety deposit box and the list in the back of the passbook disclosed, and (2) the amount of the balance in the savings account which she claimed was shown by said passbook. As against this testimony by the appellant, the receiver of the appellee trust company testified that he had examined the books and records of said trust company and found no deposit account of Sidney P. Craig. The assistant secretary of the trust company testified that Craig was a depositor in the Allen County Building & Loan Association, but had never had any savings account in the appellee trust company; that the passbook in question was a passbook issued by the Allen County Building & Loan Association; that he had never made any notation in the back thereof of any bond

sales to said Craig although he had sold some of the bonds to Craig; that he had made up the ledger sheets, showing the balance of $3,715.78 in Craig's savings account, from the books of said Building & Loan Association; that when the appellant first mentioned the said passbook to him, she said that she did not know where it was; that she could not locate it and asked him to make a search for it at the bank; that he did make such a search and failed to find the book. He also testified that on the day the safety deposit box was opened the appellee and her attorney came to his window in the trust company, showed him the inventory which they had prepared, showing bonds in the amount of $6,000.00, and asked if he knew of any other property which belonged to the decedent; that he told them that the decedent owned another $5,000.00 bond, which the trust company had in its possession, and for which he then issued a "duplicate receipt" to be placed in the safety deposit box. He testified that the trust company kept only a card record of bond sales and that when a bond was taken up by the trust company the card showing its sale to the purchaser was taken out of the file and destroyed; that no ledger account of such sales was kept; and that the appellant made no claim, against the trust company, of having more than $11,000.00 of bonds belonging to the decedent until about one year after decedent died. The attorney who represented the appellant in probating her brother's will and in opening up said estate was present at the time the safety deposit box was opened. He testified that said safety deposit box contained no memorandum listing bonds in the sum of $22,000.00; that at that time nothing was said about there being such a memorandum; that after the inventory was made all of the papers and records which had been

taken out of the box were replaced therein; the box was then locked and the key was given back to the appellant; that the appellant did not suggest to him that the trust company might have more bonds than it had accounted for until in the latter part of 1919, at which time she suggested to said attorney her belief that the trust company might have additional bonds in the sum of possibly $5,000.00, apparently basing this belief on the thrifty habits of her brother rather than on any record which she had seen. It is also significant that the appellant signed and swore to the inventory of her brother's estate which did not show the additional bonds and cash which she now claims belonged to the brother's estate.

When we consider only the evidence most favorable to the appellee, we find that the verdict of the jury is sustained by sufficient evidence. There was sufficient evidence to support a finding that the appellee had paid and accounted to the appellant for all of decedent's property with which it was chargeable. There was evidence tending to show that at the time of decedent's death he owned only $11,000.00 of bonds and that in his savings account there was a balance of only $3,715.78. The evidence that these amounts were paid to his estate is undisputed.

Appellant also assigns as a reason for a new trial the refusal of the court to give her tendered instruction numbered 3. The essentials of this instruction were included in instruction numbered 6 given by the court on its own motion. The refusal of the court to give the tendered instruction, therefore, did not constitute error. *New York, etc., R. Co.* v. *First, etc., Savings Bank* (1926), 198 Ind. 376, 388, 153 N. E. 761; *Sterling Fire Ins. Co.* v. *Comision Reguladora* (1924), 195 Ind. 29, 41, 143 N. E. 2.

Appellant also complains of the giving of instructions numbered 1, 2, 3, 4, 5, 7 and 9 tendered by the defendant. Said instruction numbered 1 told the jury that the appellee trust company was not bound by the acts or conduct of an officer of the Allen County Building & Loan Association, while such officer was acting for such association and not for the trust company; and also that there was no evidence showing or tending to show that the trust company was responsible for the obligations of the savings association. "Where there is no evidence, whatever, to maintain an issue it is the duty of the court so to inform the jury. This is not usurping the province of the jury." *Hynds* v. *Hays* (1865), 25 Ind. 31, 33. It is a correct statement of the law that the actions of an officer of one corporation, while acting solely for that corporation, do not bind another separate and independent corporation.

By said instruction numbered 2 the members of the jury were told that, in determining whether the defendant trust company converted to its own use bonds belonging to said estate, they were not to consider the evidence as to a memorandum which appellant claims was found in the testator's safety deposit box. The instruction stated that said memorandum listed more bonds than were found in the box and that it did not appear from the evidence "that said memorandum was made by any officer or employee of the defendant or that defendant was in any manner responsible for the existence of that memorandum." An examination of the evidence, as set out in the appellant's brief, discloses that the only evidence as to said memorandum is found in the testimony of the appellant. She testified that while Mr. Vesey, who was then her attorney, and one of the officers of the trust com-

pany were making an inventory of the assets of decedent's estate, the said safety deposit box was placed on a high stand where its contents were removed and examined; that she was sitting near them; that as her attorney removed the various items from the box he would announce what they were; that her attorney said, "Here is his bond list $22,000.00." On cross-examination while again describing the removal of the contents of the box she said, "The next was the bond list. He (her attorney) said $22,000.00 in bonds. I was so sick I could not hold my head up and did not pick up anything. Just listened. The list was on a paper written in pencil." The appellant complains of this instruction on the ground that it invades the province of the jury by (1) stating that the total amount of the bonds listed was more than were found in the box, (2) stating that it did not appear from the evidence that said memorandum was made by any officer of the bank, and (3) withdrawing from the jury a relevant item of evidence where it appears "that the circumstances in evidence would justify an inference that the item of evidence was an admission against interest by the defendant." The uncontradicted evidence disclosed that the safety deposit box contained none of the bonds in question but did contain receipts of the defendant trust company showing that it held for the decedent such bonds in the principal amount of $6,000.00. There could be no prejudicial error, therefore, in the statement in said instruction that said memorandum listed more bonds than were in the box. Nor did the court invade the province of the jury by stating that the evidence failed to show that said memorandum was made by any officer of the bank. The appellant apparently has confused some of the evidence in the case as to the making of a memorandum in the back of the

decedent's passbook, which she claims was made by an officer of the trust company, with the evidence as to the alleged memorandum found in the safety deposit box. The appellant has failed to point out any evidence from which it could be inferred that said memorandum in the safety deposit box was made by any officer or employee of the trust company, or that the trust company was in any manner responsible for such memorandum. A careful search of the record fails to disclose any evidence tending to prove the authorship of the memorandum. It cannot be said, therefore, that said memorandum was an admission against interest by the appellee. If it had been shown that the memorandum had been made by the decedent, it would have been, at most, only a self-serving declaration and not admissible in evidence over proper objection. From all of the evidence concerning said memorandum we are unable to say by whom it was made; when it was made; what bonds it listed; when, if ever, said bonds listed were owned by the decedent; where said bonds were at the time said list was made; or what part, if any, of said bonds had been disposed of prior to the death of the decedent. While in some cases inadmissible evidence which is introduced in a case without objection may properly be considered by a jury, it does not follow that the introduction, without objection, of evidence which had no probative value gains such value merely by being introduced. Evidence is admissible because it has probative value. The admission of evidence without objection does not give it probative value. *Sharp* v. *Baker* (1858), 22 Tex. 306, 315. In the instant case the evidence excluded by the court's instruction was hearsay testimony concerning an unsigned, written memorandum made by some unknown person. This evidence did not tend to prove any issue in this case.

It was not error to withdraw it from the consideration of the jury.

Defendant's tendered instruction numbered 3 instructed the jury that the burden was upon the plaintiff to show by a preponderance of the evidence "that the defendant, Citizens Trust Company, converted to its own use certain of the bonds of the testator, Sidney P. Craig, and has failed to account or pay for the same.[a] It is not sufficient that the plaintiff produce evidence enough to raise a suspicion in your minds that there might have been some concealment, but the evidence when all taken together must show by a preponderance the actual taking or keeping of such securities or property by the defendant." The clause "and has failed to account or pay for the same" as used in this instruction, when considered with the other language of the instruction, can only be considered an attempt by the court to explain that the trust company to be guilty of conversion must have kept decedent's bonds without any legal justification. The court correctly instructed the jury that the burden was upon the appellant to establish the conversion by a preponderance of the evidence, and that evidence which only raised a suspicion in their minds was not sufficient. When this instruction is considered with the other instructions given we do not believe the jury could have been misled by it.

Said instruction numbered 4 was as follows:

"It appears from the books and papers offered in evidence that the defendant Trust Company paid the plaintiff the entire amount owing him by the Trust Company or the Savings Association as shown by said books and papers. So that, in order to enable you to find for the plaintiff in any sum, you must find that the Trust Company, not the Savings Association, had in its possession other

securities or deposits which it concealed from the plaintiff and converted to its own use."

The appellant complains that this instruction also invades the province of the jury by stating what the books and papers showed. The only papers introduced in evidence were the ledger sheets, showing a deposit balance of $3,715.78, the memorandum explaining the consideration for the $25,000.00 bond issued to appellant, which showed $11,000.00 of bonds belonging to the decedent, and a personal pocket memorandum book in which decedent had listed Citizens Trust Company bonds in the amount of $11,000.00. It is admitted by both parties that the trust company, by the issuance of the $25,000.00 bond to the appellant, paid the appellant the amount of the deposit balance shown by said ledger sheets and $11,000.00 for bonds. Since the said ledger sheets and memorandums were subject to but one interpretation it was not error for the court to give the jury this interpretation.

Appellant complains that said instruction numbered 5 also invades the province of the jury. In this instruction, as in the preceding instruction, the court instructed the jury as to the only possible interpretation which could be placed on the evidence under consideration. Where the evidence permits of but one interpretation it is the duty of the court to so instruct the jury.

Said instruction numbered 7 was as follows:

"It is for the plaintiff to establish by a preponderance of the evidence that the defendant Trust Company has converted to its own use assets of the estate of Sidney P. Craig. This fact is not established by the loss of books or papers in relation to the transaction, but the burden is still on

the plaintiff to establish that the books and papers, if produced, would show a conversion by the defendant Trust Company. You cannot find a verdict for the plaintiff on the mere suspicion that the books and papers of the Savings Association, if produced, would show a larger deposit than that shown by the account rendered."

The appellant complains particularly of the statement that "but the burden is still on the plaintiff to establish that the books and papers if produced would show a conversion by the defendant Trust Company." The only books or papers under consideration, and which were claimed to be lost, were the memorandum, which the appellant testified was found in decedent's safety deposit box, and the passbook, which appellant testified was delivered to the trust company and never returned. Her entire case was based on the proposition that said memorandum and passbook showed additional property belonging to the decedent for which the trust company had not accounted. There was evidence adduced by the appellee to the effect that there were no books or papers in the possession of the trust company showing that decedent owned more bonds than the amount for which it had accounted. While there might be a conversion of the property by the trust company without such fact being shown on any books or papers, the statement complained of in this instruction was harmless because it was the theory of the appellant that the alleged conversion would be shown by the books and papers in question if such books and papers were found.

Said instruction numbered 9 told the jury that the absence of the books and papers did not establish existence of facts not in evidence, but might be considered in connection with and bearing upon such facts; and that the mere suspicion of the

plaintiff that she had been cheated did not constitute evidence "whether resulting from a conference with a clairvoyant or otherwise." Mere suspicion, of course, cannot be considered as evidence, no matter how aroused. Circumstances arousing the suspicion might well constitute proper evidence, but the effect of such circumstances on the mind of a party could not constitute evidence of the fact in issue. If it were shown that the trust company was in possession of books and papers which might throw light on a question, the jury would have the right to consider the failure to produce such books and papers in determining the question. By this instruction this right was recognized. The language of this instruction is not so indefinite and ambiguous as to mislead the jury.

The appellant in her brief argues at great length that the court committed reversible error in permitting the appellee to be interrogated as to numerous lawyers, whom she had consulted and had attempted to employ in connection with this case, the appellant insisting that such interrogatories were only for the purpose of creating prejudice, in the minds of the jury, against her case. In the course of her cross-examination the appellant was asked the following question, "Wasn't this Ryan that brought this suit judge at one time?" To this question "the plaintiff objects on the ground that she had a right to consult different lawyers and this estate should not be injured and the Citizens Trust Company should not be excused from paying what it owed the estate because she may have consulted a number of lawyers and even acted unwisely in going about." No valid ground for the objection to this particular question was stated. An objection to this question could not be made to serve

as an objection to another separate and distinct question. *Jennings* v. *Sturdevant* (1894), 140 Ind. 641, 646, 40 N. E. 61. To three other questions concerning the various attorneys with whom she counseled the appellant objected without stating any grounds for her objections. The record, therefore, presented no question for the determination of this court on this phase of the cross-examination of the appellant. An objection must state a particular valid ground therefor. *Ohio & M. R. R. Co.* v. *Walker* (1887), 113 Ind. 196, 15 N. E. 234.

On cross-examination the appellant was required, over objections, to answer a question as to whether she had consulted a fortune teller and to tell what the fortune teller had told her. She testified that she consulted a medium who told her that she was in business trouble and that "They tell you these papers are lost, but I tell you these papers are not lost. They never have been lost." The appellant insists that this was not proper cross-examination and was an effort to prejudice the jury.

On her direct examination the appellant had testified as to her investigation of the alleged loss of the memorandum listing the stock and the passbook; she testified in detail as to her conversations with various officers and employees of the trust company; with different attorneys employed by her, and as to an investigation of her claim by a Pennsylvania Railroad Company detective. None of these was called to substantiate her claim. All of them who were called as witnesses by the appellee denied appellant's claim. Since she had gone into the matter of her investigation of the alleged loss in her direct examination it was not an abuse of discretion by the trial court to permit her to be questioned as to another phase of the investiga-

tion which she made. When the direct examination opens on a general subject, the cross-examination may go into any and all phases of that subject. *Louisville, etc., Ry. Co.* v. *Wood* (1888), 113 Ind. 544, 556, 14 N. E. 572. The scope and control of cross-examination rests largely in the sound legal discretion of the trial court. Only a clear abuse of such discretion will constitute reversible error. *Denny* v. *State* (1921), 190 Ind. 76, 82, 129 N. E. 308; *Ledford* v. *Ledford* (1884), 95 Ind. 283, 285.

In cross-examination the trial court may, within its discretion, allow a wide latitude to test the credibility of the witness. The examiner, for this purpose, may be permitted to investigate the situation of the witness with respect to his interest, his motives, prejudices, character and other influences which operate upon his mind. *Perfect* v. *State* (1925), 197 Ind. 401, 408, 141 N. E. 52; *Johnson* v. *Wiley* (1881), 74 Ind. 233, 238. The fact that in the course of her investigation a fortune teller told the appellant that her papers were not lost may have had sufficient influence on her mind to affect, in some degree, her credibility as a witness. Since her entire claim as to said memorandum and book was supported only by her own testimony we cannot say that requiring her to answer these questions was such an abuse of discretion as to constitute reversible error.

Throughout all of the propositions presented by appellant there is the contention that she had shown that appellee had possession of her brother's bonds or at least of the book showing his ownership of such bonds and that, therefore, the burden of proof shifted to the appellee to produce either the bonds or evidence as to their disposition. In this contention appellant ignores the fact that appellee produced evi-

452

dence tending to show that it had possession of only $11,000.00 worth of bonds belonging to decedent, and that its officials and employees had never seen and knew nothing of the memorandum and passbook in question. There could be no duty on the appellee to account for property which was never in its possession or under its control.

We have examined and considered all questions properly presented by appellant and find no reversible error.

The judgment is affirmed.

NOTE.—Reported in 26 N. E. (2d) 1006.