FT. WAYNE TRANSIT, INC. ET AL. *v.* SHOMO,
BY NEXT FRIEND, ETC.

[No. 18,771.   Filed June 25. 1957.]

*Campbell, Livingston, Teeple & Dildine (now Campbell, Livingston, Dildine, Heaton & Haynie, Alexander M. Campbell,* and *Thomas W. Yoder,* all of Ft. Wayne, for appellants.

*Miller & Miller, Mickey Miller and Jeanne Miller* of

New Haven, and *William S. Gordon* of Huntington, for appellee.

PFAFF, J.—This is an appeal from a judgment in an action for damages based upon the alleged negligence of the appellants Fort Wayne Transit, Inc., and Claude W. Wheeler, an employee of appellant Fort Wayne Transit, Inc., in the operation of a bus on the streets of the City of Fort Wayne, Indiana.

The complaint averred, in substance, as follows:

South Calhoun Street was a public highway running north and south in said city; and West Wayne Street was a public highway running east and west through said city; that said two streets intersect at right angles; and that traffic control signals at said intersection regulate vehicular traffic by showing red and green lights successively; that a pedestrian cross-walk was clearly marked east and west across Calhoun Street, parallel with and immediately north of West Wayne Street and that said pedestrian traffic across said Calhoun Street in said cross-walk was regulated by a traffic signal which alternately showed "walk" and "wait."

That the appellant Fort Wayne Transit, Inc., regularly operated trackless trolley bus routes on South Calhoun Street extending through the intersection of South Calhoun Street and West Wayne Street; that on February 2, 1953, at about four o'clock in the afternoon, appellee was walking west on the sidewalk on the north side of West Wayne Street; that when appellee approached the east side of South Calhoun Street the traffic control light showed "wait" for pedestrians waiting to cross South Calhoun Street; that appellee stopped in obedience thereto; that said traffic control signal changed to "walk" and appellee proceeded from the sidewalk into the cross-walk across South Calhoun Street parallel to and north of West Wayne Street.

That at the time and place the appellants were operating a trackless trolley bus northeastward on Calhoun Street, approaching West Wayne Street from the south; that appellee reached a point approximately eight feet west of the east curb line of South Calhoun Street, all within the above cross-walk, when appellant, Claude W. Wheeler, acting as agent and motorman for appellant Fort Wayne Transit, Inc., ran a trackless trolley bus belonging to appellant Fort Wayne Transit, Inc., into and upon the appellee, knocking her to the pavement whereby she received injuries consisting of a fracture of her skull and lacerations to her head.

Appellee's amended complaint contained eight specific allegations of negligence:

1. That appellants did negligently and carelessly drive and operate said bus into the said cross-walk without first ascertaining whether anyone was lawfully occupying said cross-walk and in particular the appellee herein.
2. That appellant failed to keep a proper lookout for pedestrians lawfully using said cross-walk at said time and place and in particular the appellee herein.
3. That appellants carelessly and negligently did drive said motor bus across said cross-walk and into and against this appellee when at said time and place the appellants, by use of reasonable care could have and should have known that appellee herein was then and there lawfully using said cross-walk, and as a result of such negligent failure on the part of the appellants herein said appellants negligently and carelessly drove into and against the appellee herein.
4. That the appellants did them and there carelessly and negligently drive and operate said bus into and across said West Wayne Street in disobedience of and against a traffic control light which showed red "stop" for northbound vehicular traffic.
5. That the appellants did then and there negli-

gently and carelessly drive and operate said vehicle at a speed greater than was reasonable and prudent under the conditions herein alleged and having regard to the actual and potential hazards then existing, to-wit, thirty miles per hour.

6. That the appellants did then and there carelessly and negligently drive and operate said bus over the aforesaid pedestrians' cross-walk, which said cross-walk was at said time being lawfully used by this appellee and other pedestrians and that said appellants did negligently and carelessly fail to yield the right of way to said appellee, all in violation of a city ordinance of the City of Fort Wayne, Indiana, then in full force and effect.

7. That the appellants did then and there carelessly and negligently drive and operate said bus through said intersection and into and against the appellee and did negligently and carelessly fail to give said appellee any audible warning by horn, whistle or otherwise, of the approach of said vehicle to said appellee.

8. That the appellants did then and there carelessly and negligently fail to apply the brakes and fail to stop said bus when, by the exercise of prudent and reasonable care under the circumstances, the appellants could have applied said brakes and stopped said bus, so as to prevent striking said appellee, who was then and there using said cross-walk.

The prayer of the complaint asks judgment for $100,000.

Issues were joined upon appellee's amended complaint and the answer of the appellants in two paragraphs, the first paragraph being a denial under the rules, and the second paragraph alleging contributory negligence.

Trial by jury resulted in a verdict in favor of appellee for $15,000, upon which judgment was entered in accordance therewith.

The assigned errors relate to the overruling of appellants' motion for a new trial. The said motion contains four clauses or grounds which, in substance, are as follows: Error in the amount of recovery in that it is too large; the decision of the court is contrary to law; the decision of the court is not sustained by sufficient evidence; and alleged error in the rulings of the court in the admission of certain evidence over the objections of the appellants; and that the court erred in giving appellee's instructions numbered 8 and 10 and refusing to give appellants' instructions numbered 4 and 13.

It was stipulated by and between appellee Judith Kay Shomo by George Shomo, her next friend, and Fort Wayne Transit, Inc., and Claude W. Wheeler, appellants, that the following shall be considered as taken as being part of the evidence in this cause:

That on February 2, 1953, there were in full force and effect in the City of Fort Wayne, Allen County, Indiana, the following ordinances of the said City of Fort Wayne:

Section 73b, Chapter 31, of the Municipal Code of Fort Wayne:

*"Pedestrians facing green or 'go' or 'walk' signal.* Pedestrians facing a green or 'go' signal or facing a 'walk' signal where the intersection is controlled by a so-called 'wait-walk' signal may proceed across the street or roadway within any marked or unmarked crosswalk. Such pedestrians shall have the right of way over all vehicles, including those making turns, until they have reached the opposite curb."

Section 21, Chapter 31, of the Municipal Code of Fort Wayne:

*"Obedience to sign and signals required:*

It shall be unlawful for any operator or for the motorman of any streetcar to disobey the instruction of any official traffic sign or signal

placed in accordance with the provisions of this chapter, unless otherwise directed by a police officer."

Section 22, Chapter 31, of the Municipal Code of Fort Wayne:

*"Traffic control signal legend.*

Whenever traffic at an intersection is controlled by traffic control signals exhibiting colored lights or the word 'go,' 'caution' and 'stop,' said lights and terms shall indicate as follows, except as provided in section 73 of this chapter:

> "Green or 'go.' Traffic facing the signal may proceed except that vehicular traffic shall yield the right of way to pedestrians and vehicles lawfully within a crosswalk or the intersection at the time such signal was exhibited.

> "Yellow or 'caution.' When shown alone following the green or 'go.' Traffic facing the signal shall stop before entering the nearest crosswalk at the intersection unless so close to the intersection that a stop cannot be made in safety.

> "Red or 'stop.' Traffic facing the signal shall stop before entering the nearest crosswalk at the intersection or at such other point as may be designated by the board of public safety, and remain standing until green or 'go' is shown alone."

Section 73c, Chapter 31, of the Municipal Code of Fort Wayne:

> "Pedestrians facing a red or 'stop' signal or facing a 'wait' signal where the intersection is controlled by a 'wait-walk' signal shall not enter the street or roadway until a proper signal is exhibited authorizing pedestrians to cross."

It was further stipulated between the said parties that on February 2, 1953, vehicular traffic at the intersection of Wayne and Calhoun Streets in the City of Fort Wayne, Indiana, was controlled by electrical automatic traffic signals placed there pursuant to legally constituted authority and that pedestrian traffic at said intersection was con-

trolled by automatic walk and wait signals placed there pursuant to legally constituted authority.

From the record it appears that the appellee was six years of age at the time of the accident; that she received a small deep wound on the left side of her head which bled profusely. Her lower extremities showed some bruises and abrasions. Intracranial bleeding continued for twenty-four to forty-eight hours. On the day following the accident she began to vomit and had a headache and surgical intervention was necessary to avoid serious dehydration and intracranial damage due to pressure on the brain. Bony fragments had to be removed from the skull and it was necessary to clear out the hair and foreign material driven in with the bony fragments. A small round hole was produced to gain access to the intracranial cavity. A blood clot was removed and the brain allowed to come back into a normal position against the skull. A small metal disc was used to cover the opening made by the operation so as not to leave her with a soft spot in the skull. This metal disc is a permanent feature.

Appellee was hospitalized for about eight days and went back to school within a month or so, after her hair grew back.

An electroencephalogram was made over two years after the accident, a test which it was testified is a universally recognized test to detect brain damage. A doctor who interpreted this and who had not personally examined appellee testified that the record was abnormal; that it appeared to be a major abnormality and was strongly suggestive of a focal convulsive disorder arising in the left temporal or inferior motor area, "possibly with some grand mal component, although the latter may merely represent spread." He stated that if the person had sustained an injury two years before, the persistence of the abnormality indicates that the

injury in all probability is a permanent injury. Based upon such interpretation, as well as examination and treatment of appellee, another doctor testified that, "I think it would be fair to state that there is objective evidence of permanent brain damage which may very well later manifest in her by having convulsions." He further testified that in his opinion the original blow plus the effect of the bony fragments must have bruised the underlying brain and that the bruising has resulted in scar tissue; that it was likely that appellee will have an entirely normal life with the possible exception that she would have a predisposition to convulsive disorders manifest later on; that in similar wounds during the war fifty to seventy-five percent of those receiving the wounds developed some form of convulsive disorder. It was also testified that seventy-five percent of people with an abnormality similar to that of appellee, resulting from injury, will some time develop focal epilepsy. Appellants argue that the damages assessed were assessed upon the theory that appellee may "possibly" develop convulsions or epilepsy in the future; that the other injuries would not have warranted the amount of damages assessed; that the mere possibility of future damages may not be considered as an element in determining the amount of damages; that the verdict is for that reason not sustained by sufficient evidence, and that the damages assessed are excessive.

As stated in *The Ohio & Mississippi Railway Company* v. *Cosby et al.* (1886), 107 Ind. 32, 36, 7 N. E. 373:

". . . That an injury may possibly result in permanent disability, will not warrant the assessment of damages for a possible disability, unless it is also reasonably certain to follow."

In our opinion, the evidence as to the effects which may follow the injury in later years goes beyond a mere

possibility, and amounts to a reasonable probability. We cannot say that it is apparent that the jury took into consideration some improper element in determining the amount of the verdict. Taking into consideration all of the injuries sustained, in our opinion the damages assessed are not shown to be excessive.

In *Dallas & Mavis Forwarding Company* v. *Liddell* (1955), 126 Ind. App. 113, 126 N. E. 2d 18, transfer denied, this court held:

"Regardless of what our view may be as to the amount of the verdict, we cannot substitute our view for that of the jury unless it clearly appears that the amount is so large it cannot be explained on any reasonable hypothesis other than prejudice, passion, partiality, corruption, or other improper considerations. *Pohlman* v. *Perry*, (1952), 122 Ind. App. 222, 103 N. E. 2d 911; *Kawneer Manufacturing Company* v. *Kalter*, (1917), 187 Ind. 99, 101, 102, 118 N. E. 561."

See also *Lincoln Operating Co.* v. *Gillis* (1953), 232 Ind. 551, 561, 114 N. E. 2d 873.

One of the allegations of negligence is that appellants operated the bus into and across the street in disobedience to and against a traffic control light, which showed red "stop" for northbound vehicular traffic. Appellants argue that under the undisputed facts appellants' vehicle entered the intersection on a "green" signal. While the evidence is in conflict, there was evidence, which we must accept for the purpose of this appeal, from which the jury could have properly found the appellants' vehicle entered the intersection on a "red" signal.

Error is claimed in the admission of certain evidence following the overruling of objections to four separate questions asked of the doctors.

The objection to the first question was, in substance,

that "it now appears that he had not examined this patient." This is not the objection now urged by appellants, and the objection actually made is waived. An objection not made in the trial court will not be considered on appeal. *Gernhart* v. *State* (1954), 233 Ind. 470, 120 N. E. 2d 265; *Scott* v. *Pandell et al.* (1954), 124 Ind App. 474, 118 N. E. 2d 372; *Tompkins* v. *Smith* (1952), 122 Ind. App. 502, 106 N. E. 2d 487.

No specific objection was made to the second question and therefore no error is presented. *Beeler* v. *State* (1952), 230 Ind. 444, 104 N. E. 2d 744; *Craig Exrx.* v. *Citizens Trust Company* (1940), 217 Ind. 434, 26 N. E. 2d 1006.

The third question asked what the chances were for a patient with an abnormality as revealed by the graph record to develop focal epilepsy. The only ground of the objection now urged is that "it is conjectural and speculative." As we read the question, it, in effect calls for a statement of the probable results of the injury. The answer elicited was, "I would think that if one considered one hundred people with a similar abnormality, if that abnormality was the result of an injury, that probably seventy-five percent of those people some time would develop focal epilepsy." In our opinion there was no error in the admission of this evidence. A medical witness may be asked his opinion as to the probable results of an injury. *The Louisville, New Albany and Chicago Railway Company* v. *Wood* (1887), 113 Ind. 544, 14 N. E. 572, 16 N. E. 197; *The Louisville, New Albany and Chicago Railway Company* v .*Wright* (1888), 115 Ind. 378, 16 N. E. 145, 17 N. E. 584; *Lake Lighting Co.* v. *Lewis* (1902), 29 Ind. App. 164, 64 N. E. 35; *The Pennsylvania Company* v. *Frund* (1891), 4 Ind. App. 469, 30 N. E. 1116; *The Louisville, New Albany and Chicago Railway Company*

v. *Lucas* (1889), 119 Ind. 583, 21 N. E. 968. In the last cited case our Supreme Court stated, at page 592:

> ". . . It is competent to ask a medical witness his opinion as to the probable results of an injury to the person, on direct examination, . . ."

The fourth question was: "Doctor, may one who has received an injury such as Judith Kay Shomo received, and appears to be perfectly normal as far as outward reflexes and outward examinations are concerned, but still years later develop epilepsy as a result of the damage to the brain?" The objection was: "We object to the form of the question—speculative." The answer was "Yes."

Other witnesses had previously testified to the possibility of epilepsy.

The doctor under examination had previously testified without objection or motion to strike, that there is objective evidence of permanent brain damage, "which may very well later manifest in her by having convulsions." Previous evidence of the same witness covering the subject matter, having gone to the jury without objection or motion to strike, error, if any, was harmless. *Beeler* v. *State, supra; Dixon* v. *State* (1945), 223 Ind. 521, 62 N. E. 2d 629.

By appellee's instruction numbered 3 the jury was told that if they found from the evidence that the material allegations of appellee's complaint were sustained by a fair preponderance of the evidence and there was a failure of proof of contributory negligence, their verdict should be for the appellee. The objection to this instruction was to the effect that it omitted the element of proximate cause. The jury was instructed by the court in another instruction as to the allegation of the complaint; that the complaint alleged certain acts of negligence and that as a sole and proxi-

mate result of said negligence the appellee had been damaged. Appellants do not argue that the allegation of causal connection was not a material allegation of the complaint. The instruction is not subject to the objection made to it.

Appellee's instruction numbered 10 quoted to the jury a certain ordinance which provides that pedestrians facing a "walk" signal "shall have the right of way over all vehicles, including those making turns, until they have reached the opposite curb," and went on to state that if appellee was proceeding across the street within a cross-walk while facing a "walk" signal, she had the right of way over all vehicles until she reached the opposite curb. The objection was (1) that this instruction told the jury that appellee had an "absolute" right of way, although no pedestrian has an "absolute" right of way over vehicles which had entered the intersection before the walk signal was exhibited to the pedestrian; (2) that appellee's instruction numbered 6 quoted another ordinance which must be read in connection with said ordinance and when so read the quoted ordinance does not provide that a pedestrian has a right of way over a vehicle which had entered the intersection before the light changed to "walk;" (3) that the instruction omits any reference to any duty on the part of a pedestrian to exercise ordinary and reasonable care in making and completing the crossing despite having a "walk" signal.

The instruction, after quoting the ordinance, merely restated its provisions in different words. The instruction does not state that a pedestrian has an "absolute" right of way, merely stating that under the circumstances set forth a pedestrian has a right of way. A right of way means the privilege of the immediate use of the highway and is not an "absolute" right which may be exercised without using reasonable

care. *Neuwelt* v. *Roush* (1949), 119 Ind. App. 481, 85 N. E. 2d 506, transfer denied; *Cochran* v. *Wimmer* (1948), 118 Ind. App. 684, 81 N. E. 2d 790, transfer denied. Except as to mandatory instructions, incompleteness of one instruction may be cured by another instruction. The instruction in question must be read as a part of the entire charge to the jury. *Stull* v. *Davidson et al.* (1955), 125 Ind. App. 565, 127 N. E. 2d 130; *Bain, Admx.* v. *Mattmiller* (1938), 213 Ind. 549, 13 N. E. 2d 712; *Carter* v. *Aetna Life Ins. Co.* (1940), 217 Ind. 282, 27 N. E. 2d 75. When this instruction is read in connection with the court's instruction numbered 13, which covers the situation where a vehicle is in the intersection when a light changes to "walk" for pedestrians, we believe the jury was properly instructed. We find nothing in the ordinance quoted in appellee's instruction numbered 6 which would render appellee's instruction numbered 10 incorrect. The duty of the appellee to exercise care was fully covered by appellants' instruction numbered 1 given by the court.

It was not error to refuse instruction numbered 13. The substance of this instruction is covered by the court's instruction numbered 13. Similiarly, it was not error to refuse appellants' instruction numbered 4. Its substance is covered by appellants' instruction numbered 1. It is not error to refuse to give an instruction when its subject matter is fully and adequately covered by other instructions given. *Kindler* v. *Edwards* (1955), 126 Ind. App. 261, 130 N. E. 2d 491; *Stokes, alias Coleman* v. *State* (1954), 233 Ind. 300, 119 N. E. 2d 424.

Appellant Claude W. Wheeler testified on February 2, 1953, he was operating trolley coach No. 116 for the Fort Wayne Transit, Inc., north on Calhoun Street, had stopped in the block south of Wayne Street, took on passengers and then pro-

ceeded north on Calhoun Street at which time the light was "green" at the intersection of Calhoun and Wayne Streets. As he entered the intersection he saw a lady and a little girl step into the street off the curb. In his side view mirror he saw the little girl come into contact with the rear of the coach. He was driving slow, going between 10 and 15 M. P. H., and stopped as quickly as he could. The last time he looked at the light as he was crossing it was "green." He saw no pedestrians in the south cross-walk and no pedestrians other than the lady and the little girl in the north cross-walk. He further testified he sounded no horn or signal as he crossed the intersection and further the little girl was in the north part of the cross-walk when he first saw her and he does not remember applying the brakes when he first saw the little girl although he did slow down before entering the intersection but did not stop. Wheeler further testified that Mrs. Shomo and the little girl stepped off the curb. They stopped. He proceeded north. So in this case appellant Claude W. Wheeler testified that he saw the appellee step into the street when he entered the intersection; that he sounded no horn or signal nor slackened his speed or applied his brakes although he observed the appellee in the north part of the cross-walk. This knowledge imposed upon the appellants the duty to determine if appellee was upon or closely approaching the half of the highway they were using, and if necessary to ascertain that fact, to slacken his admitted speed and place the bus under such control that the driver could see a pedestrian rightfully crossing and avoid striking her after he did see her. *Fields* v. *Hahn* (1944), 115 Ind. App. 365, 57 N. E. 2d 955; *Croatian Bros. Pkg. Co.* v. *Rice* (1928), 88 Ind. App. 126, 147 N. E. 288.

Was appellant negligent in not sounding the horn? Duties in respect to sounding the horn are covered in

three sections of the statute (Acts 1925, Ch. 213, p. 570, §47-513, Burns' 1952 Replacement). This section of the statute has not been superseded. *Conner* v. *Jones* (1945), 115 Ind. App. 660, 59 N. E. 2d 577, 60 N. E. 2d 534.

The courts generally recognize that the operator of a motor vehicle upon the public highway or street should anticipate the presence of pedestrians lawfully using the highway and keep a proper lookout and have his automobile under control in order to avoid a collision with another person using proper care, and under the statute cited it is the duty of the motorist to slow down and give timely warning of his approach. *Am. Carloading Corp.* v. *Gary Tr. & Sav. Bk., Admr.* (1940), 216 Ind. 649, 25 N. E. 2d 777; *Vockel* v. *Rhynearson* (1935), 101 Ind. App. 637, 197 N. E. 705; Acts of 1939, Ch. 48, p. 289, §47-2034, Burns' 1952 Replacement, provides:

> "Notwithstanding the foregoing provisions of this act, every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon a roadway and shall give warning by sounding the horn when necessary, and shall exercise proper precaution upon observing any child or any confused or incapacitated person upon a highway,"

§47-2229 (a), Burns' 1952 Replacement, provides in part:

> " . . . The driver of a motor vehicle shall when reasonably necessary to insure safe operation give audible warning with his horn but shall not otherwise use such horn when upon the highway."

In *Pfisterer* v. *Key* (1941), 218 Ind. 521, 33 N. E. 2d 330, the Supreme Court said:

> " . . . The warning is for the purpose of giving the pedestrian an opportunity to protect himself. See *Croatian Bros. Packing Co.* v. *Rice* (1928), 88 Ind. App. 126, 147 N. E. 288. We think it also might be construed as a notice to the pedestrian that the

driver intends to use that part of the highway on which the pedestrian is walking. The duty to slow down is enjoined upon drivers of automobiles, perhaps to the end that the driver may change the course of his automobile in time to avoid a collision, if the pedestrian does not heed the warning."

The jury could have found under the evidence that appellee's position in the street was such that the appellant Wheeler should reasonably have anticipated that she might move into a position of danger and that he should have given proper warning of his intention to proceed.

Regardless of the part of the street in which the pedestrian may be, if the driver sees, or in the exercise of reasonable care should see, the pedestrian in time to avoid a collision with him and does not do so, he may be liable for resulting injuries. *Fishman* v. *Eads* (1929), 90 Ind. App. 137, 168 N. E. 495; *Neuwelt* v. *Roush, supra.*

We believe that there is ample evidence from which the jury could have found negligence on the part of appellant Wheeler in the particulars alleged in the complaint.

We further believe that there is ample evidence from which the jury could find that appellee was using due care and that she was not guilty of contributory negligence.

Contributory negligence becomes a question of law only when the evidence was favorable to the plaintiff and all proper inferences therefrom are such that reasonable minds will agree that the injury complained of was the proximate result of the plaintiff's own negligence. *D. Graff & Son* v. *Williams* (1945), 115 Ind. App. 597, 61 N. E. 2d 72. Where the facts are in conflict or of such a character that reasonable minds may draw different inferences from them,

then the question is one of fact to be determined by the jury. *Gatewood et al.* v. *Lynch* (1939), 107 Ind. App. 168, 23 N. E. 2d 289; *Assoc. Truck Lines, Inc.* v. *Velthouse* (1949), 227 Ind. 139, 84 N. E. 2d 54; *Northwestern Transit, Inc.* v. *Wagner* (1945), 223 Ind. 447, 61 N. E. 2d 591; *Neuwelt* v. *Roush, supra.*

The case of *Red Cab, Inc.* v. *White* (1938), 213 Ind. 269, 12 N. E. 2d 356, presents a factual situation similar in several respects to this case. The court said:

"Upon the question of the appellee's contributory negligence, the evidence discloses that she was crossing the street at an intersection, and under the ordinance of the city in force at that time, she was given the right of way over the taxi. This was a question for the jury and not a question for the court to determine.

"There is some evidence from which the jury might reasonably conclude that the appellant was guilty of negligence in the operation of the taxi, and that there was no evidence of contributory negligence upon the part of the appellee. In other words, more than one inference may be drawn from the facts. Therefore the question of negligence is one of fact for the jury to determine.

See also *Vogel* v. *Ridens* (1942), 112 Ind. App. 493, 44 N. E. 2d 238.

The verdict was sustained by sufficient evidence, and was not contrary to law.

Judgment affirmed.

Crumpacker, C. J., Cooper, P. J., Bowen, Kelley, Royse, JJ., concur.

NOTE.—Reported in 143 N. E. 2d 431.