LEPPERT BUS LINES, INC. *v.* RAYBORN.

[No. 19,598. Filed May 10, 1962.]

*Henley & Bunger,* of Bloomington, for appellant.

*Robert F. McCrea,* and *Evens, Baker & Barnhart,* of Bloomington, for appellee.

PFAFF, J.—This was an action brought by appellee against appellant for damages for the death of his minor son resulting from an accident involving appellant's bus and a bicycle ridden by appellee's minor child.

The cause was submitted for trial before a jury and a verdict was returned by it in favor of the appellee in the sum of $14,900.00. The court rendered judgment on the verdict.

The appellant filed its motion for a new trial, containing the following specifications: (a) The verdict of the jury is not sustained by sufficient evidence; (b) the verdict of the jury is contrary to law; and (c) error of law occurring at the trial in that the trial court refused to give to the jury appellant's tendered instruction No. 21. The motion for a new trial was overruled and this is assigned as error by the appellant in this appeal.

The evidence most favorable to the appellee reveals that on the day in question, August 6, 1959, appellee's minor son, William B. Rayborn, was riding a bicycle south on South Dunn Street in the City of Bloomington, Indiana, approaching the intersection of East Allen Street and South Dunn Street at approximately 11:15 a.m. A bus owned by appellant was traveling east on East Allen Street approaching said intersection at the same time. The appellant's bus and the bicycle, ridden by decedent child, collided at the intersection resulting in fatal injuries to the child.

The evidence further reveals that there was a "Yield Right of Way" sign on the north side of Allen Street.

The weather on that day in question was warm and the skies were clear and the sun was shining. There were passengers on the bus when the accident occurred. One passenger testified that he was sitting in the second seat back of the driver and that he saw appellee's son when the bus was about fifty feet west of the intersection and that he was about forty feet north. This same passenger testified that the bus driver was talking to another passenger sitting at the driver's right. He further testified that he did not feel the driver apply the brakes prior to the collision of the bus and the bicycle ridden by appellee's son. One of the other passengers, seated near the back door on the left side of the bus, testified that she saw the decedent on the bicycle before the bus reached the intersection where the collision occurred. This witness, Mrs. Wood, testified in part as follows:

"Q. As the bus approached the corner of that intersection, did you see a boy coming on a bicycle?

"A. Yes.

"Q. And how far was the boy from the corner when you saw him?

"A. I don't know, but close. I don't know. I wouldn't know the distance exactly.

"Q. And you were seated near the back door of the bus, is that right?

"A. Um, hum.

"Q. Will you just tell the jury, in your own words, just what happened then?

"A. Well, as I saw the boy comin', it just looked like they were both goin' to hit at the same time and he was so close, so I just turned my head to keep from seein' it.

"Q. Was there any sensation of application of brakes? In other words, were you thrown out of your seat?

"A. No."

Mr. Michael Lee Grubb, another passenger on the bus, testified in part as follows:

"Q. Just tell the members of the jury in your own words what happened when you approached the corner of Allen and Dunn where the accident happened?

"A. Well, we came by and I saw one little boy come by on a bicycle and I imagine another one was a comin' —

"Court: Michael, will you speak just a little louder and just take your time and then we will all be able to hear you. Now, you may continue.

"A. Well, we was comin' down Dunn and Allen and I saw a little boy coming down a hill on a bicycle and I imagine there was another one coming down and when we got to the corner where I could see, there was another little boy comin' and I yelled at the driver and told him to look out and by the time he stopped the bus we had already hit the boy.

"Q. You say you yelled to the driver to look out?

"A. Yes.

"Q. Now, how far was the little boy who got hit from the bus when you first saw him?

"A. About thirty five feet.

"Q. And you were sitting on the right hand side of the bus?

"A. Yes.

"Q. Now, when you yelled to the driver to look out, what did the driver do?

"A. He looked over at me and then looked back.

"Q. He looked towards you?

"A. Yes.

"Q. And then looked back towards the road?

"A. Yes."

The evidence also revealed that standing on Allen Street, looking east toward Dunn Street at approximately fifty feet or maybe a little farther back west

of Dunn and looking north on Dunn Street, a person can see about fifty to seventy-five feet. There was evidence that standing in the above position, a person could see something as high as a bicycle even without a rider on it.

The evidence also reflected that appellant's bus proceeded for a distance of seventy-five to one hundred feet after colliding with the decedent's bicycle and that the decedent was dragged underneath the lower front part of the bus for said distance. The collision occurred approximately one block west of Bryan Park which is used almost exclusively by children. A resident of the neighborhood where the accident occurred testified that almost everyone living in the neighborhood had children who used Allen Street in going to and from Byran Park.

The appellant argued that it was reversible error for the trial court to refuse to give appellant's tendered instruction No. 21. This instruction reads as follows:

"Should you find by a preponderance of the evidence that the conduct of the deceased William Rayborn was a proximate cause of the collision referred to in the complaint the plaintiff Hal. B. Rayborn would not be entitled to recover any damages whatsoever against the defendant Leppert Bus Lines, Inc. even though you should further find that he was not accountable for contributory negligence by reason of his age."

There is a well settled rule of law in this state that it is not error for the trial court to refuse to give an instruction where its subject matter is adequately covered by other given instructions. *Ft. Wayne Transit, Inc. et al.* v. *Shomo, etc.* (1957), 127 Ind. App. 542, 143 N. E. 2d 431; *Kindler, etc.* v. *Edwards* (1956), 126 Ind. App. 261, 130 N. E.

2d 491; *N. Y. C. & St. L. R. Co.* v. *Merc. Natl. Bk.* (1960), 130 Ind. App. 638, 165 N. E. 2d 382. The above rule also applies even where the refused instruction appears more appropriate than the one given. *Automobile Underwriters, Incorporated* v. *Smith* (1960), 131 Ind. App. 454, 166 N. E. 2d 341.

This court in the case of *Ring* v. *Ring* (1961), 131 Ind. App. 623, 174 N. E. 2d 58, 62, stated: "The instructions must be read as a whole, and where instructions are merely repetitious it is not reversible error to refuse the same."

We find that appellant's instruction No. 4 was given which in essence instructed the jury that if it found the appellee's deceased son was negligent and that such negligence proximately contributed to cause the injury, then appellee could not recover. Appellant's instruction No. 6 was given which instructed the jury that if the damages suffered by appellee were not the result of negligence on the part of anyone, but merely an accident, then appellee could not recover. Appellant's instruction No. 7 was given and this instruction defined proximate cause for the jury. Appellant's instruction No. 20 was given by the court below which instruction again encompassed the language that if the appellee's deceased son was negligent and this negligence proximately caused the injury, then appellee could not recover. It also instructed the method to be used by the jury in determining whether appellee's deceased son was contributorily negligent.

The above four instructions which were tendered by appellant and given by the court below adequately covered the subject matter contained in appellant's tendered instruction No. 21 and, therefore, in accordance with the authorities cited above, we must

conclude that it was not error for the trial court to refuse said instruction.

The appellant also argues that the verdict of the jury is not sustained by sufficient evidence. To support his argument appellant contends that the evidence clearly demonstrates the contributory negligence of the minor child.

The general rule is that the question of contributory negligence is one of fact for the jury when the evidence on the point is in dispute, or is conflicting, or is so that different minds may reasonably draw different conclusions or inferences on the issue of contributory negligence. *Larkins* v. *Kohlmeyer* (1951), 229 Ind. 391, 98 N. E. 2d 896; *Baltimore & Ohio R. Co.* v. *Daugherty* (1953), 123 Ind. App. 373, 111 N. E. 2d 483.

The question of contributory negligence does not become a question of law for the court unless only one reasonable inference or conclusion can be drawn from the evidence. *Highshew* v. *Kushto* (1956), 126 Ind. App. 584, 131 N. E. 2d 652; *Newton* v. *Cecil* (1955), 125 Ind. App. 416, 124 N. E. 2d 713.

The evidence in this case, as previously set out in this opinion, was in conflict and we do not feel that it was susceptible to only one conclusion or inference. We are of the opinion, therefore, that the question of appellee's deceased son's contributory negligence was a fact question and that it was proper for the trial court to present said question to the jury under proper instructions.

For the reasons hereinbefore stated, the judgment is affirmed.

Kelley, P. J., Bierly, J., and Gonas, J., concur.

NOTE.—Reported in 182 N. E. 2d 260.