MERLIE C. STATH AND STATH OFFICE EQUIPMENT & SUPPLY, INC. *v.* ALEXANDER S. WILLIAMS, PERSONALLY AND AS CORONER OF LAKE COUNTY ET AL.

[No. 3-575A92. Filed October 3, 1977.]

*John R. Nesbitt, J. Philip McGraw, Nesbitt, Fisher & Daugherty*, of Rensselaer, *Clarence Borns*, of Merrillville, for appellants.

*Frederick F. Eichhorn, Jr., David C. Jensen, Schroer, Eichhorn & Morrow*, of Hammond, for appellees Lundeberg and Kaltenthaler, *Richard S. Tebik, Skozen & Tebik*, of Munster, for appellee Williams.

HOFFMAN, J.—Merlie C. Stath and Stath Office Equipment & Supply, Inc. brought their respective actions against Alexander S. Williams, Coroner; R. A. Lundeberg, Deputy Coroner and Albert Kaltenthaler, a coroner's pathologist, all of Lake County, Indiana, personally and in their official capacities, for the alleged unauthorized autopsy performed June 1, 1967, on the deceased Robert V. Stath. The allegations of the complaints were generally that due to the incompetence of Dr. Kaltenthaler and the abuse of discretion exhibited by Dr. Williams in selecting him, and due to the approval and participation of Dr. Lundeberg, an erroneous

and careless autopsy was performed causing the plaintiffs to suffer damages. These were alleged to include the personal anguish of Mrs. Stath together with the expenses incurred by both of the plaintiffs in attempting to obtain accidental death benefits under certain insurance policies on the life of the deceased.

After the plaintiffs' motions for jury trial had been denied the two initially separate causes were consolidated for trial to the court. At the conclusion of plaintiffs' case-in-chief, the defendants made a motion, labeled a judgment on the evidence, which was tantamount to a prayer for an involuntary dismissal pursuant to Ind. Rules of Procedure, Trial Rule 41(B). The motion was granted for all defendants. *See, Powell v. Powell* (1974), 160 Ind. App. 132, 310 N.E.2d 898; *Clark v. Melody Bar, Inc.* (1971), 149 Ind. App. 245, 271 N.E.2d 481. Accordingly this court must determine whether there was in fact substantial evidence of probative value which could have sustained the material allegations of the complaint. *Building Systems Inc. v. Rochester Metal Prod., Inc.* (1976), 168 Ind. App. 12, 340 N.E.2d 791. The record discloses the following facts most favorable to the appellants.

On June 1, 1967, the deceased left his home in apparent good health. During the day he contacted his wife and explained that he had an engagement with a customer in Crown Point, Indiana, and would not return to Rensselaer for dinner.

Thomas Schmal, the customer with whom the deceased had the engagement, testified to the effect that the two had a couple of drinks and a beer over their dinner discussion. He further noted that Mr. Stath appeared to be in normal physical condition and suffering from no discernable ailments when they departed company after the meal.

Later that evening at about 9:30 P.M. an Indiana State Police Officer was dispatched to a one-car automobile accident at the intersection of State Road 2 and Interstate 65. Upon arrival at the scene he found collided with a bridge abutment a 1966 Cadillac automobile owned by the deceased driver who was identified as Robert V. Stath. An ambulance attendant had moved the body

out of the car and a photographer from the coroner's office took several photographs.

Thereafter the body was removed to Methodist Hospital in Gary, Indiana, pursuant to an order by Dr. Williams as coroner, for the purpose of having an autopsy performed to determine the cause of death. Dr. Kaltenthaler as coroner's pathologist performed the post-mortem by doing an external and internal examination of the body, including dissection of various organs. His conclusion was that the cause of death was "cor pulmonale due to extensive emphysema." The subsequent coroner's verdict which included an inquiry by Dr. Lundeberg stated, in pertinent part:

"VERDICT: An inquiry into the death of Robert Stath, 115 Park Avenue, Rensselaer, Indiana, reveals that on June 1, 1967, Mr. Stath was found expired at the scene of a one-car accident which occurred on the above date at approximately 9:30 P.M., on SR 2, at its intersection with I 65 Eagle Creek Township, 5½ mile east of Lowell, Indiana. Investigation disclosed that Mr. Stath was Eastbound on SR 2, when he veered off the highway to the right traveling a total of 313 feet into the grass along the road and striking the bridge abutment of I 65 head on. It is believed that the deceased took ill at the wheel and that accounted for his losing control of his vehicle. The entire front end, roof, and left rear fender of the Stath auto was damaged. At the time of the accident the weather was clear, the lighting dark and the road pavement dry. A Blood Alcohol Analysis taken on the deceased revealed a concentration of .22%.

"CAUSE OF DEATH: Natural—Cor pulmonale, extensive; bilateral pulmonary emphysema (bulbous type)."

Based on these facts appellants first question the coroner's jurisdiction asserting that the death of Robert Stath was so clearly accidental as to preclude any suspicion of criminal conduct therefore rendering the performance of an autopsy an abuse of discretion. Reliance is placed on *Sandy v. Board, etc.* (1909), 171 Ind. 674, 87 N.E. 131, and *Jameson v. The Board of Commissioners of Bartholomew County* (1878), 64 Ind. 524, for the proposition that "the statute with respect to inquests and autopsies has from the earliest times been an arm of the criminal law" and

that the mere discovery of the deceased in an automobile which had collided with a bridge abutement is insufficient evidence of crime from which the coroner can retain jurisdiction.

However, an investigation by the coroner under IC 1971, 17-3-17-4(a) (Burns Code Ed.), cannot properly be construed as discretionary or based solely upon *a priori* suspicion of crime. Rather it is required that when there is notice of the death of a person "from violence or by casualty *or by death when in apparent good health, or when found dead, or found in any suspicious, unusual or unnatural manner*[1] * * *", the coroner must initiate an investigation. Appellants are mistaken in their assumption that there should be some evidence of crime before the coroner may invoke his jurisdiction. Jurisdiction arises upon disclosure of the factual circumstances contemplated in the statute. It is the investigation itself which determines whether criminal suspicions are justified. Thus, while it is conceivable that a court could find evidence which shows that the coroner's exercise of jurisdiction was erroneous on technical grounds it cannot be said to be an abuse of discretion to order an investigation when, as here, the essential criteria of the statute have been met.

In the case at bar Robert Stath was "found dead" and could be said to have been "found dead when in apparent good health" or possibly "by casualty." Thereafter a representative from the coroner's office made an investigation at the scene and took photographs of the automobile and the body of the deceased. The reporting police officer whose investigation confirmed the conclusion of the coroner stated in his affidavit that there appeared to be "no application of brakes prior to the accident", that "[d]espite the impact of the automobile * * * the body was intact" and that "the decedent's face and body were not bloody." Under such circumstances the coroner was required to assume jurisdiction.

Once having assumed jurisdiction the coroner, in the fur-

1. Emphasized portions were added by Acts 1963, ch. 195, § 1, p. 251, as part of the general revision of the statute.

therance of his inquiry, had virtually an unlimited prerogative to order a post-mortem. IC 1971, 17-3-17-4(c) (Burns Code Ed.), states, in pertinent part:

"Whenever any coroner under this act * * * deems it necessary in the discharge of his duties to have an autopsy performed he shall employ a physician possessing the education and training that meet the standards established by the American board of pathology for certification or a physician holding an unlimited license to practice medicine in Indiana acting under the direction of such qualified physician to perform such autopsy, * * *."

This clearly designates that the decision regarding the performance of an autopsy as part of the inquiry is based on the professional expertise and discretion of the coroner. Moreover such a post-mortem is intended to be a scientific investigation concerning the cause of death as determined from the corpse itself and not necessarily from other physical findings made at the scene as part of the overall investigation. In this context the coroner's pathologist was required to follow his function as a physician to perform only the autopsy and accordingly cannot be held liable for failing to investigate other physical evidence. *Hassard v. Lehane* (1912), 135 N.Y.S. 711; *Young v. College of Physicians and Surgeons* (1895), 81 Md. 358, 32 Atl. 177. *See also*, 31 Ind. L.J. 296.

Appellant argues however that even if the autopsy were technically authorized the coroner and his agents were so haphazard in the performance of it and in their execution of official duties concerning the investigation as to show sufficient elements of bad faith to overcome the immunity statute IC 1971, 17-3-17-15.[2] It is argued in this regard that there was no proper investigation of the accident nor viewing of the photographs of it by the pathologist. Appellees are further said to have ignored the obvious evidence of traumatic injury to the deceased from the collision causing them to arrive at a conclusion of "death by

2. IC 1971, 17-3-17-15 provides: "Persons performing medical examinations and autopsies — Exemption from civil liability. — All persons who in good faith order or perform medical examinations and autopsies pursuant to the laws of this state shall be granted immunity from civil suits for damages in ordering or performing such medical examinations or autopsies."

natural cause" through an unnecessary and improper autopsy.

Assuming arguendo the truthfulness of these assertions they still do not raise any factual issue to the evidentiary threshold of bad faith.

"Bad faith" is not simply bad judgment or negligence, rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity. It is different from the negative idea of negligence in that it contemplates a state of mind affirmatively operating with furtive design or ill will. *Vickers v. Motte* (1964), 109 Ga.App. 615, 137 S.E.2d 77.

Appellants' reliance on *Scheuer v. Rhodes* (1974), 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed. 2d 90, is misplaced since here there is no showing after presentation of evidence that the coroner's investigation and autopsy were performed in bad faith. The fact that appellants' expert witness thought the coroner relied too heavily on his pathologist in finding a cause of death does not establish the intentional wrongdoing which is ordinarily the *sine qua non* of bad faith. Furthermore no evidence was presented concerning the state of mind or intent of the respective appellees with regard to the performance of the investigation.

The 37-year-old Mr. Stath was found dead under circumstances within the confines of the statute. No explanation existed for the one-car automobile collision and the police report implied death before impact. Photographs were taken by the coroner's office and Dr. Lundeberg made reference to the investigation concerning the accident in his verdict. Under these circumstances the performance of an autopsy, contrary to appellants' assertions, shows a good faith effort to determine a medically accurate cause of death and therefore precludes the recovery sought.

As stated in *Jameson v. The Board of Commissioners of Bartholomew County, supra,* at 540 of 64 Ind.:

"These are the public duties of the coroner, which he is bound under the law to discharge, without fear or favor, in the interests of humanity and public justice. Private malice or

private gain should never influence or actuate the coroner in the discharge of his high public duties; and the presumption is, and must be until the contrary has been made to appear, that duty alone, and neither malice nor gain, has prompted or instigated the coroner in making his public inquest into the manner and cause of sudden or violent death, who is guilty thereof, and the degree of guilt. The public at large, and the individual citizen, have the right, we think, to rely implicitly on this presumption, in dealing with the coroner in any matter connected with the proper discharge of his official duties. It can not be assumed that a coroner, in making a public inquest under the requirements of law, is influenced therein by improper motives, or actuated thereto by malice or revenge, or by any desire of gain."

Appellants next contend that the trial court erred in refusing to admit into evidence the clothes allegedly taken from the decedent at the time of his death. However before physical evidence is relevant to the determination of a factual issue the party offering such evidence must lay a proper foundation for its admission. *Storckman v. Keller* (1968), 143 Ind. App. 43, 237 N.E.2d 602. No such foundation was laid in the case at bar. The evidence was not identified as belonging to the deceased nor was it identified as being related to his demise.

Appellants next contend that the trial court erred in excluding certain portions of the opinion testimony given by their expert witness. However, review of the motion to correct errors, together with the memorandums made a part thereof, disclose a failure to set out the questions, the objections or the offer to prove what evidence would have been given by the witness in answer to the question. The issue is therefore not preserved for review by this court and will not be considered. *Loeser v. Loeser* (1974), 160 Ind. App. 236, 311 N.E.2d 636 (transfer denied); *Daben Realty v. Stewart* (1972), 155 Ind. App. 39, 290 N.E.2d 809.

Finally appellants contend that the trial court erred in allowing Dr. Kaltenthaler to testify as to matters on cross-examination beyond the alleged scope of plaintiffs' direct examination. It is argued that plaintiffs' witness, as a defending party in the lawsuit, was called merely to bring the post-mortem examination into

evidence so plaintiffs' subsequent expert witness Dr. Petty could make observations on his level of professionalism. However, Dr. Kaltenthaler was examined about the manner in which he performed the autopsy, the reasons for reaching his conclusion as to the cause of death, his consultation with other persons and his investigation of other physical evidence.

Since appellants pursued the circumstances of the autopsy and attempted to present its protocol as a matter which would be subject to subsequent comparison through its own expert, no error can be predicated on the trial court's refusal to limit cross-examination to his recollection of a previous deposition. *Craig, Exrx. v. Citizens Trust Company* (1940), 217 Ind. 434, 26 N.E.2d 1006. The scope, extent, method and manner of cross-examination is under the control and discretion of the trial court. *Kavanagh v. Butorac* (1966), 140 Ind. App. 139, 221 N.E.2d 824 (transfer denied). Accordingly no abuse of discretion has been demonstrated.

For the foregoing reasons the judgment of the trial court must be affirmed.

Judgment affirmed.

Staton, P.J. and Garrard, J. concur.

NOTE—Reported at 367 N.E.2d 1120.