## STAMETS *v.* WILSON.

[No. 13,031.   Filed December 14, 1928.   Rehearing denied April 16, 1929.   Transfer denied May 29, 1929.]

404

*W. H. Eichhorn, Frank W. Gordon* and *John H. Edris*, for appellant.
*William N. Ballou* and *Guy Colerick*, for appellee.

McMahan, J.—Complaint by appellee alleging that appellant, as a physician, negligently failed to properly reduce and treat a fracture of the femur of appellee's right leg. Trial by jury resulted in a verdict and judgment for appellee for $3,150. The error assigned relates to the overruling of the motion for a new trial.

The first contention is that the verdict is not sustained by sufficient evidence. In support of this contention, appellant insists there is no evidence to prove that appellant did not possess reasonable skill and did not exercise ordinary care, such as would be possessed and exercised by members of his profession in the locality where he resided and practiced. This contention cannot prevail. At least one physician testified that it was the ordinary and usual practice among physicians and surgeons in the locality where appellant resided and practiced, before starting to reduce a fracture of the femur, to use the X-ray to ascertain the exact nature of the fracture; that it is the ordinary practice of physicians and surgeons in that locality, before discharging a patient who has a femur fracture, to use the X-ray to ascertain whether there has been a proper reduction of the fracture. A physician who accompanied appellee when he was first taken to appellant's hospital and when appellant was first em-

ployed to treat appellee, testified that he suggested to appellant that the X-ray machine be used; that appellant said his machine was not working at that time, but that he would take an X-ray later. Appellant did not make use of an X-ray in order to ascertain the nature and extent of the fracture, or to ascertain whether there had been a proper reduction; and there is other evidence of improper treatment.

We are not impressed with the contention that the damages assessed are excessive. Appellant testified that a fracture of the femur was one of the easiest to set. The fracture of appellee's leg was not set. The ends of the bone were not placed in apposition but were allowed to slip past one another, so that the leg is about four inches shorter than it should be, and the bone was allowed to unite in such a manner that the leg is crooked. As a result of the condition of appellee's leg, he is a permanent cripple and will be compelled to use a cane as long as he lives. He has lost about fifty per cent of the use of his ankle. Appellee's knee is stiff, and the evidence is sufficient to warrant a finding that such stiffness was in part caused by the negligence of appellant. Before his injury, appellee was able to and did do about all kinds of farm work. He is not now able to do that work.

The court, in instruction 1 given at the request of of appellee, told the jury, in substance, that if they found appellee did not receive the care and attention an ordinarily-skilled physician in the vicinity would have given, and that, as a result of such failure, without negligence on his part, he suffered increased pain and injury, the jury should render a verdict for appellee, and assess his damages as found from all the evidence not in excess of $10,000. Appellant, challenging the correctness of this instruction, says it does not limit the amount of damages to compensation for the pain and

suffering endured and for the amount in which appellee's capacity to earn money is impaired. While this instruction is not happily worded, it is not shown to have been damaging to appellant. As was said in *Pittsburgh, etc., R. Co.* v. *Reed* (1909), 44 Ind. App. 635, 88 N. E. 1080: "No fact or circumstance is brought to our attention by appellant in either its original or reply brief, which can be said to have improperly influenced the jury in its finding either for or against the appellant, and without a showing that the inadvertent expression probably had some influence on the jury to the injury of appellant, it will be treated as a harmless error," etc. And this is especially true when this instruction is considered in connection with instruction 5, given at the request of appellee, wherein the jury was told, if it found all of the material allegations of the complaint had been proved, then, in determining the amount of the verdict, it might consider the personal disfigurement, if any, sustained by appellee as alleged in the complaint, the inconvenience and annoyance on account thereof and "render a verdict in such sum as will compensate the plaintiff for the damages the evidence shows he has sustained" not exceeding $10,000. As was said by Judge Myers, speaking for the court in *Pittsburgh, etc., R. Co.* v. *Reed, supra:* "We are not persuaded that any ordinarily intelligent juror would have misunderstood this instruction to the detriment of either party."

. Appellant next contends the court erred in giving said instruction 5, for the reason that evidence was offered on the trial in support of alleged negligent acts not alleged in the complaint, and that the instruction did not limit the amount of the recovery to the damages sustained as a "result of the negligence complained of as shown by the evidence." If any evidence was introduced on matters outside of the issues, appellant has not in this connection called our attention to such evidence.

No error is shown in the giving of this instruction.

In instruction 6, given at the request of appellee, the court among other things told the jury if it found, in reducing the fracture, ordinary care required a sufficient and proper counterextension be applied to the muscles surrounding the fractured bone so as to keep the bone in alignment, and if it also found from the evidence insufficient counterextension had been negligently used and placed so as not to keep sufficient counterextension upon the muscles, and by reason thereof the ends of the bone were not kept in alignment but were permitted to pass and cross each other, by reason of which the leg became shorter than the other, its verdict should be for the plaintiff if the other allegations of the complaint were proved.

Appellant says the giving of this instruction was error, because there is no charge in the complaint that the counterextension applied was insufficient.

The complaint, among other things, alleges that a large weight was placed upon his leg to retain the leg in position and reduce the fracture; that his leg was shorter than it should have been if properly treated; that such weight was applied improperly, by reason of which he suffered an injury to his ankle of such a nature that he will never be able to use his foot in a proper manner, and that, by reason of such improper treatment, he will always be compelled to use crutches and be unable to work; that appellant never properly reduced the fracture and placed the bones in a proper position; that, by reason of the failure to properly reduce the fracture and by reason of placing the weight upon his foot in an improper manner, the plaintiff lost the use of his leg and ankle. The court, at the request of appellant, instructed the jury that there was no allegation in the complaint that the weight did not exert the proper pull, or that the weight was an improper one, but that the allegation was that

it was applied in an improper manner, and that, unless the evidence showed an injury to plaintiff's ankle by reason of the manner in which the weight was attached, plaintiff was not entitled to recover as to such injury.

If the jury followed the instructions, and we must presume they did, no damages could have been allowed on account of the insufficiency of the counter-extension, other than what might have been caused by reason of the manner in which the counterextension was placed. There is evidence showing that an extension cord attached to the leg at the ankle and passing over the top of the foot of the bed to a weight, was used as a counterextension, and that the cord was so attached that it passed over the toes and held the foot in an unnatural position. There is an abundance of evidence to prove that, by reason of the manner in which the extension weight was attached to the foot, the counterextension furnished was not sufficient for the purpose for which it was intended, and that the cord holding the weight should have been attached to the leg above the knee instead of at the ankle. A counterextension may be insufficient because of the manner in which it is applied, as well as by not being of sufficient weight. There was no error in giving instruction 6.

Instruction 11, given at the request of appellee, was to the effect that if appellant undertook to reduce the fracture, and made an examination of the leg in a negligent manner and from such examination believed the fracture was in the middle of the middle third, when, by a proper examination, he could have easily discovered that the fracture was in the middle of the upper third, but failed to do so, and, in attempting to treat the fracture, did so believing that the fracture was at a point other than the actual location, and that by reason thereof he negligently failed to properly reduce

the fracture, the plaintiff could recover if he had otherwise proved the material allegations of his complaint. Appellant says that the complaint does not charge him with a negligent examination, and consequently no issue was presented upon which such an instruction could be based. By instruction 14, given at the request of appellee, the jury was told that if appellant, in reducing the fracture, applied splints for the purpose of holding the bones in alignment, and negligently allowed the splints to become loose, and by reason thereof the bones slipped out of position, and that ordinary care required the splints to be held firmly to the sides of the leg, but that appellant negligently failed so to do, and, as a result thereof, the bones knit together in an improper alignment, appellee was entitled to recover if he had proved all the other material allegations of his complaint. Appellant contends instruction 11 is erroneous because the complaint does not charge him with a negligent examination, and consequently no issue was presented upon which such an instruction could be based. He also contends that there is no allegation in the complaint that he negligently failed to retain the splints firmly on the leg, and, for that reason, instruction 14 was also on matters outside the issues. In support of his contention that the court erred in giving instructions 6, 11 and 14, appellant cites and relies upon *Inland Steel Co.* v. *Ilko* (1913), 181 Ind. 72, 103 N. E. 7; *National Motor, etc., Co.* v. *Pake* (1915), 60 Ind. App. 366, 109 N. E. 787, and *Hatton* v. *Hodell Furniture Co.* (1920), 72 Ind. App. 357, 125 N. E. 797. Each of the cases cited states the general rule to be that instructions must be confined to the issues and if instructions are given which are outside the issues, the giving of such instructions will be reversible error, unless it clearly appears that the complaining party was not harmed. In the first case cited, an instruction outside the issues was held harmless. The

second case was an action by a servant against a master, the theory of the complaint being that the master, after notice of a defect in certain machinery, promised to repair it but failed to do so. The court instructed the jury that it was the master's duty to have furnished the servant with reasonably-safe machinery and appliances and to continuously exercise reasonable care to ascertain the condition of such machinery and appliances. This instruction, not being in harmony with the theory of the complaint, but having injected another and different theory, was held reversible error. The opinion does not show whether the evidence was in the record or not. In the last case cited, the evidence was not in the record, and, in the absence of the evidence, the instruction was presumed to have been harmful.

In *Union Fraternal League* v. *Sweeney* (1916), 184 Ind. 378, 111 N. E. 305, the action was on a policy of insurance, where the complaint alleged full performance of all the conditions required to be performed by the plaintiff. The evidence failed to show performance by the plaintiff. Evidence, however, was introduced without objection, showing a waiver on the part of the insurance company of performance. The court refused to instruct that there could be no recovery in the absence of proof of performance, and instructed that there could be no recovery unless performance or waiver was shown. In holding this was not reversible error, the court said: "Section 700 Burns 1914, §658 R. S. 1881 [§725 Burns 1926] forbids a reversal of a judgment because of an imperfection in a pleading which might have been amended in the court below to conform to the evidence." In the instant case, the plaintiff, without objection, introduced an abundance of evidence to show that appellant was negligent in the matters covered by said instructions 6, 11 and 14. The case was tried the same as it would have been tried if the complaint had specifically alleged negli-

gence in the application of counterextension, negligence in making the examination and negligence in the application of splints and in allowing them to become loose. If appellant had, at the proper time, objected to the admission of such evidence, the court would doubtless have sustained such objections or have granted plaintiff leave to amend his complaint; and after the evidence was admitted, the court, on application, would have been justified in granting leave to amend the complaint so as to correspond with the evidence. The cause was fairly tried on the merits, and the record clearly shows that appellant was not prejudiced by the giving of said instructions. If the cause were reversed, the trial court might and doubtless would, on a proper showing, give leave to amend the complaint. Justice does not demand another trial.

Appellee's wife, without objection, testified that, prior to his injury, appellee took care of the crops, sowed clover seed, helped take in wheat and oats, husked corn and did all the work on the farm except that which was done with team; that he had done that kind of work for a number of years prior to his injury, but had not done any work since his injury. She was then asked what if any work he had done off the farm, and over the objection that the evidence was not within the issues, she said he had done none. Appellant contends this was error, because no special damages were alleged in the complaint. Appellee preceded his wife as a witness, and, without objection, testified as to his physical condition before and after his injury, to character of work he had done before the injury, and that since his injury he had done no farm work, and could not walk without the use of a cane. With evidence of this character before the jury, there was no error in allowing Mrs. Wilson to answer the question.

A daughter of appellee and Edward Wann, both of

whom were witnesses for appellee, also testified concerning the character of work appellee did before and after the injury. Appellant objected to the questions asked the daughter, but no objection was made to the questions asked the witness Wann. No reversible error is shown in the admission of this evidence.

Dr. Barnett, after having testified as to his familiarity with X-ray pictures, was asked to look at two pictures and to state whether, in his opinion, they were pictures of the same femur bone in the same person, and, after saying the pictures were of the same bone, was asked what were the identifying marks. Appellee had testified that Dr. Grandy, then deceased, had taken two X-ray pictures of appellee's injury, and the inference is that these two pictures were the ones that were shown Dr. Barnett. We cannot agree with appellant that the subject inquired about was not a subject for opinion evidence. The questions were proper and there was no error in overruling the objections. What we have said concerning the testimony of Dr. Barnett applies to the contention that the court erred in allowing Dr. Van Buskirk to testify as to what the X-ray pictures showed.

Appellee, as a part of his evidence in rebuttal, read the examination of appellant taken before the trial. Appellant objected to the reading of this examination, on the ground that the same had not been filed nor published as required by statute. The record shows that, before the submission of the cause to the jury, "all depositions on file" were published. The record does not disclose the name of any person whose deposition had been filed, nor the name of any witness whose deposition had been ordered published. Appellee says the examination of appellant was on file and was ordered published before the commencement

414

of the trial. While this statement is controverted by appellant, it does not appear that he was harmed by the action of the court in allowing this examination to be read in evidence, and we hold no reversible error is shown in its admission.

Complaint is also made of misconduct of the trial judge, but the conduct of the judge is not such as will warrant a reversal.

Judgment affirmed.