RICHMOND GAS CORPORATION *v.* BARBARA M. REEVES AND
ROBERT L. REINKE, CO-ADMINISTRATORS OF THE ESTATE OF
BLAINE SCOTT REEVES, DECEASED, HEATH SURVEY CONSULT-
ANTS, INC.; CITY OF RICHMOND, INDIANA; THE SECOND NA-
TIONAL BANK OF RICHMOND, ADMINISTRATOR DE BONIS NON
WITH WILL ANNEXED OF THE ESTATE OF DONALD MARTING,
DECEASED; THE SECOND NATIONAL BANK OF RICHMOND, AD-
MINISTRATOR DE BONIS NON WITH WILL ANNEXED OF THE ES-
TATE OF LOUISE MARTING, DECEASED; AND MARTING ARMS, INC.

[No. 671A114. Filed October 31, 1973. Rehearing denied November 28, 1973.]

LYBROOK, J.—This appeal arises after plaintiffs-appellees recovered a jury verdict of $250,000 against defendant-appellant Richmond Gas Corporation in an action for the wrongful death of decedent Blaine Scott Reeves, husband of plaintiff Barbara M. Reeves.

The action stemmed from a violent series of explosions which occurred in downtown Richmond, Indiana, on April 6, 1968, killing 41 persons.

Richmond Gas timely filed its Motion to Correct Errors, which was overruled, and raises the following contentions of error for review in this appeal:

1. Whether the trial court erred in excluding photographs of a gas explosion in Terre Haute, Indiana, which were offered by appellant to demonstrate the difference in appearance between a gas and a gunpowder explosion.

2. Whether the trial court erred in refusing to grant a mistrial following alleged improper remarks by plaintiff's counsel.

3. Whether the court erred in excluding evidence concerning the circumstances of employment of one of appellant's expert witnesses.

4. Whether the court erred in admitting testimony of a witness called by defendant Heath Survey Consultants, Inc., concerning a conversation between the witness and a deceased employee of appellant.

5. Whether the court erred in permitting defendant Marting Arms, Inc. to read into evidence a portion of a deposition which contained certain opinions based upon hearsay and information not in evidence.

6. Whether the court erred in refusing to withdraw from the jury the issue of negligence charging appellant with failure to protect its pipes from rusting in soil conducive to rusting.

7. Whether the court erred in instructing the jury that if they found the explosion to be a gas explosion, plaintiff was not required to prove the source of ignition, while

refusing to instruct the jury that if they found it to be a gunpowder explosion, source of ignition did not have to be proved.

8. Whether the court erred in refusing to give appellant's tendered instruction concerning its standard of care.

9. Whether the court erred in refusing to instruct the jury that a damage award to plaintiffs would not be subject to Federal or State income tax.

10. Whether the jury was erroneously instructed on the measure of damages.

11. Whether the verdict of the jury was excessive.

At trial, conflicting evidence was presented as to the number, nature, and causes of the explosion or explosions. Richmond Gas argued that only one explosion occurred, that being at the Marting Arms Store where the decedent was killed, and that the force of that explosion destroyed Virginia's Beauty Shop and Vigran's. Reeves, on the other hand, presented evidence that more than one explosion occurred. However, testimony was conflicting as to where the first of the explosions took place—at the Marting Arms Store, next door at Virginia's Beauty Shop, or across the street at Vigran's.

The key issue at trial was whether the explosion in question was a gas explosion as Reeves argued, or a gunpowder explosion, as contended by Richmond Gas. Also in contention was the issue of whether there was both a gas and a gunpowder explosion. This raised questions of the sequence and relative magnitudes of the explosions.

Extensive testimony was presented in support of each party's theories. Experts called by Reeves testified that in their opinion the explosions were caused by leaking gas, while experts called by Richmond Gas testified that in their opinion the explosion was caused by gunpowder.

On the voluminous and conflicting evidence presented at trial, the jury found for the plaintiff Reeves and against the defendant Richmond Gas Corporation. The jury further returned a finding in favor of defendants, Heath Survey Consultants, Inc. and Marting Arms, Inc.

## ISSUE 1.

Richmond Gas first argues that the trial court erred in excluding photographs of damage to a building following a gas explosion in Terre Haute, Indiana.

The photographs, marked as defense exhibits B and C, were presented to Reeves' expert witness Rolla Harger during cross-examination by Richmond Gas. Reeves objected on the grounds that their admission would raise questions of conditions and circumstances at a different time and place and would thereby lead to confusion. The objection was sustained, and the photographs were excluded.

Later in the trial, Richmond Gas handed exhibits B and C to expert witness Henry Morton as he testified concerning the phenomenon of "brisance".[1] He was asked whether the pictures were typical examples of either very low brisance or its absence. After then asking Mr. Morton to compare the photographs with defendants' exhibit G-80, a picture of the Richmond explosion, Richmond Gas offered exhibits B and C into evidence. Reeves objected on the grounds that the exhibits had been previously ruled inadmissible. The objection was sustained, and the jury was instructed to disregard Morton's testimony concerning the exhibits.

Richmond Gas argues that exclusion of the photographs during cross-examination of Dr. Harger, deprived them of the right to test the credibility of his testimony. They further maintain that the later exclusion of the exhibits hampered them in their explanation of the phenomenon of "brisance".

The admission and rejection of photographs rests largely within the discretion of the trial court, and its decision will not be overturned unless an abuse of discretion is shown. *Central Indiana Rwy. Co.* v. *The Anderson Banking Co.* (1968), 143 Ind. App. 396, 240 N.E.2d

---

1. Brisance has been defined as the relative shattering effect resulting from the detonation of various types of explosives. This effect is measured by experts and considered as a factor in arriving at an opinion as to the cause of an explosion.

840. *Evansville School Corp.* v. *Price* (1965), 138 Ind. App. 268, 208 N.E.2d 689. In our opinion, Richmond Gas has failed to show an abuse of discretion in the trial court's refusal to admit exhibits B and C into evidence.

Photographs should be admitted only where they will assist and enlighten the jury. They are not proper where they may serve as a source of confusion or prejudice. *Evansville School Corp.* v. *Price, supra.* The admission of photographs of other explosions occurring under differing and unique conditions and circumstances might well confuse and mislead a jury.

In the case at bar the court exercised sound discretion in refusing to admit the exhibits. Had he ruled otherwise the door would have been opened to the admission of innumerable photographs of other explosions, each requiring proof of the attendant circumstances. The end result of such a voluminous presentation could well mislead the jury by distracting them from the task at hand.

It is also well settled that there is no abuse of discretion in refusing to admit demonstrative evidence where the jury is sufficiently informed by other evidence of that which is attempted to be portrayed. *Margevich* v. *Chicago & N. W. Ry Co.* (1953), 1 Ill. App. 2d 162, 116 N.E.2d 914. The phenomenon of "brisance" was sufficiently explained by expert testimony, and the theory could have been applied to the numerous photographs of the Richmond explosion which were admitted into evidence.

## ISSUE 2.

Richmond Gas next contends that the trial court erred in refusing to grant a mistrial following certain improper remarks by plaintiff's counsel. The remarks grew out of a disagreement concerning the admissibility of defendant's exhibits B and C when Richmond Gas attempted to introduce

the pictures for the second time during direct examination of expert witness Henry Morton. The remarks appear in context as follows:

"Q. And does that—those pictures [Exhibits B & C], when combined with the Defendant's Exhibit G-80, illustrate the difference in brissance [sic] in different explosions?

A. Yes, sir. They do.

Q. We now offer into evidence Defendant's Exhibits "B" and "C".

HON. ARIBERT YOUNG, COUNSEL FOR PLAINTIFF: Well now, wait a minute, I though [sic] they were in evidence. You pulled one on us here.

HON. R. STANLEY LAWTON, COUNSEL FOR RICHMOND GAS: We didn't pull one at all.

HON. ARIBERT YOUNG, COUNSEL FOR PLAINTIFF: Oh, no, for heaven's sake—I thought these were in evidence.

COURT: Are they in evidence?

HON. ARIBERT YOUNG, COUNSEL FOR PLAINTIFF: No, they are not. These are photographs . . .

COURT: Now wait just a minute.

HON. ARIBERT YOUNG, COUNSEL FOR PLAINTIFF: Of all the stinking tricks!

HON. R. STANLEY LAWTON, COUNSEL FOR RICHMOND GAS: Now, if the Court please, I object to the . . .

COURT: Now, let's not get juvenile here.

HON. ARIBERT YOUNG, COUNSEL FOR PLAINTIFF: All right, I'm sorry. But I have had him do this before, this is not evidence in this case.

HON. R. STANLEY LAWTON, COUNSEL FOR RICHMOND GAS: If he —

HON. ARIBERT YOUNG, COUNSEL FOR PLAINTIFF: Well, Your Honor, let me make my objection. We object to these photographs, they put them in under subterfuge.

HON. R. STANLEY LAWTON, COUNSEL FOR RICHMOND GAS: No, sir . . .

HON. ARIBERT YOUNG, COUNSEL FOR PLAINTIFF: This is not—these are not photographs that relate to this explosion in any way . . . The Court ruled on

this before and—for him to do this—I ask that Mr. Lawton be reprimanded—in front of the Jury—this Court had ruled that these were not admissible, and . . .

HON. R. STANLEY LAWTON, COUNSEL FOR RICHMOND GAS: This is on a different basis entirely, and if we're going to have an argument, I'd like to have the Jury—I would like to have it heard out of the presence of the Jury.

COURT: You may step aside, again. The Court will hear argument on the admissibility of this exhibit.

COURT RECESS FOR JURY TO STEP ASIDE:"

Subsequent to the argument on the admissibility of the exhibits, but prior to the recalling of the jury, Richmond Gas objected to the remarks made by plaintiff's counsel during the above exchange and moved for a mistrial. The court overruled the motion and admonished counsel for both Richmond Gas and Reeves to refrain from any further outbursts.

Richmond Gas argues that the court erred in refusing to grant its motion for mistrial and that, at the very least, the court should have either admonished counsel for Reeves in the presence of the jury or instructed the jury to disregard the prejudicial remarks.

The above contention must fail for the reason that the record reveals that Richmond Gas failed to lay the proper groundwork for its motion.

In *Raisor* v. *Kelly* (1972), 152 Ind. App. 198, 282 N.E.2d 871, this court quoted as follows from the leading case *Lawson* v. *Cole* (1953), 124 Ind. App. 89, 115 N.E.2d 134:

" 'Our courts have laid down the procedure which must be followed in order to reserve any question for review on appeal relating to misconduct of counsel. The steps in this procedure as set forth in Ramseyer, Ex'r v. Dennis (1918), 187 Ind. 420, 116 N.E. 417, 119 N.E. 716, and followed by the Supreme Court in Gamble v. Lewis (1949), 227 Ind. 455, 85 N.E.2d 629, and by this court in Richmond Insurance Co. of New York v. Boetticher (1938), 105 Ind. App. 558, 12 N.E.2d 1005, and Powell v. Ellis (1952), 122 Ind. App. 700, 105 N.E.2d 348, are:

'(1) To promptly interpose and state their objection, if reasonably required, to the objectionable language or argument, and request the court to so instruct the jury as to counteract any harmful effect of such language or argument, and if granted, and such instructions were not sufficient to cure the error, follow such action by a motion to have the submission set aside; (2) to promptly object to the improper language or argument of counsel, and move to set aside the submission, stating reasons why the harm done could not be cured by any action the court might take in the matter.'

This court has specifically laid down the rule in Richmond Insurance Co. of New York v. Boetticher, *supra,* that it is insufficient to present misconduct of counsel for review on appeal by merely moving to set aside submission. The moving party must also state reasons therefor and show the trial court that the harm cannot be cured by some action of the trial court.' "

In the case at bar, Richmond Gas failed to request that the jury be admonished to disregard Reeves' remarks. Neither did it state reasons why any harm done could not be cured by any action the court might take.

In its reply brief, Richmond Gas asserts that it did in fact request that Reeves' counsel be admonished in the presence of the jury. However, a search of the record fails to reveal such a request.

We therefore cannot conclude that the trial court erred in refusing to grant appellant's motion for mistrial.

## ISSUE 3.

Richmond Gas next contends that the trial court erred in preventing testimony concerning the circumstances of employment of one of its expert witnesses, Henry Morton.

The question asked, the objection by Reeves, and the exchange outside of the presence of the jury are as follows:

"DIRECT EXAMINATION OF MR. MORTON BY HON. R. STANLEY LAWTON, COUNSEL FOR RICHMOND GAS:

Q. Now sir, when was the first knowledge that you had of this explosion that took place in Richmond, on April 6th, 1968?

A. On the 9th of April, I received a call from Mr., well, attorney Dalton, of the law firm of Clausen, Hirsh, Miller and Gorman in Chicago, advising me that there had been a severe gas explosion at Richmond, Indiana, and would I accompany him to Richmond to investigate the explosion.

Q. All right, and did you come to Richmond on that assignment?

A. Yes, sir.

Q. And do you know what the nature of the interest of that law firm was?

OBJECTION: HON. ARIBERT YOUNG, COUNSEL FOR PLAINTIFF:

Now, objection, Your Honor, the interest of some other law firm is not involved in this law suit, and would not be material to any of the issues we are to try here.

HON. R. STANLEY LAWTON, COUNSEL FOR RICHMOND GAS:

If the Court please, I think that . . .

HON. ARIBERT YOUNG, COUNSEL FOR PLAINTIFF:

I would like to approach the bench, please . . .

OFFER TO PROVE BY R. STANLEY LAWTON, COUNSEL FOR RICHMOND GAS:

Your Honor, there is a series of questions. Do you want these made out of the presence of the Jury?

COURT: I think that is right, yes.

JURY RETIRES.

OFFER TO PROVE BY R. STANLEY LAWTON, COUNSEL FOR RICHMOND GAS:

The answer to his question would be yes. Next question: What was the nature of their interest?

The defendant offers to prove that the witness, if permitted to answer, would say they represented American Citizen Insurance Company and underwriters who had subrogative interests and were interested in procuring evidence to support a claim against the Richmond Gas Corporation.

Next question:—Were you aware of this interest at the time you were making your investigation?

The offer to prove:—Witness, if permitted to answer, would say, 'I was.'

HON. ARIBERT YOUNG, COUNSEL FOR PLAINTIFF: Counsel has propounded questions and given what he states would be answers without disclosing in his offer to prove that the answer of the witness would be what other people had told him—nothing he had any personal knowledge of or any information that would in any way be binding upon the plaintiff.

HON. R. STANLEY LAWTON, COUNSEL FOR RICHMOND GAS:

The next question:—With whom did you confer in connection with this investigation?

If permitted to answer, this witness will testify:—'In addition to the attorneys at Chicago, I conferred directly with representatives of the American Citizen Insurance Company.

DIRECT EXAMINATION OF MR. MORTON CONTINUED BEFORE THE JURY BY HON. R. STANLEY LAWTON, COUNSEL FOR RICHMOND GAS:

Q. You weren't hired by me, or anyone connected with me, were you sir?

A. No sir.

Q. You weren't hired by anyone connected with the gas company?

A. No."

An examination of the record fails to disclose any ruling by the trial court on Reeves' objection to the line of questioning. Although Richmond Gas asserts in its brief that the objection was sustained, we cannot imply such a ruling in its absence. *Chustak* v. *Northern Indiana Public Service Co.* (1972), 259 Ind. 390, 288 N.E.2d 149. It would be equally plausible to assume that Richmond Gas chose to abandon its line of questioning.

This court cannot consider any matter which is not contained in the record. If an appellant determines that the record of the trial proceedings is inadequate, his proper remedy is to seek correction or modification of the record under Rule AP. 7.2 (C). By failing

to pursue this remedy, Richmond Gas has waived consideration of this issue.

Assuming that the trial court did in fact sustain Reeves' objection, we are not convinced that such ruling was erroneous. The witness was first employed by a law firm which represented an insurance company, neither of which was a party to this lawsuit. Since they had not represented Reeves' interest in any capacity, the nature of the interest was immaterial, and Reeves should not be bound by a recitation of the circumstances of Morton's employment.

## ISSUE 4.

### (a)

Richmond next contends that the court erred in admitting certain testimony of witness Joseph Whitecavage, who was called by defendant Heath Survey Consultants, Inc. Whitecavage was asked on direct examination to relate a conversation had on April 9, 1968 with Elmer Lindberg, an official of Richmond Gas. The record shows:

"Q. . . . Tell the Court and Jury what the conversation was with Mr. Lindberg on April 9th, 1968?
OBJECTION: HON. R. STANLEY LAWTON, COUNSEL FOR RICHMOND GAS CORPORATION:
Object, Your Honor. Obviously improper at this time.
HON. FLOYD BURNS, COUNSEL FOR HEATH SURVEY:
Well, I don't think it is improper at all, because this has been referred to by other evidence and it is certainly admissible between Richmond Gas and Defendant, Heath Survey.
OBJECTION: HON. ARIBERT YOUNG, COUNSEL FOR PLAINTIFF:
Plaintiff objects, Your Honor, it is a conversation with somebody when we are not present. It is as obvious a matter of hearsay as you can get.
COURT: THE COURT INSTRUCTS THE JURY THAT THIS IS A MATTER OF HEARSAY, AS FAR AS THE PLAINTIFF IS CONCERNED, AND WHATEVER THE

ANSWER IS WILL NOT [BE] ADMISSIBLE AND CON-
SIDERED AS EVIDENCE AGAINST THE PLAINTIFF,
BUT ONLY AS EVIDENCE BETWEEN THE DEFEND-
ANTS, HEATH SURVEY CONSULTANTS, INC. AND
RICHMOND GAS CORPORATION.
OBJECTION: HON. R. STANLEY LAWTON, COUN-
SEL FOR RICHMOND GAS:
If the Court please, if that is the Court's ruling, we would
object on the grounds that there is no issues pending in
this law suit between these two defendants. Therefore,
it is not proper.
COURT: WELL THE COURT WILL OVERRULE THAT
OBJECTION.

Q. Go ahead and state the conversation you had with Mr.
Lindberg on Tuesday, April 9, 1968?

A. Well, we discussed the conduct of our survey insofar
as the—he wanted the area in the disaster area the
mains surveyed in this specific area, and he also
informed me that he wanted to change the specification
of the survey.

Q. In what respect?

A. He wanted us to make a hundred per cent confirmation
by bar testing every leak indication that we tested.

Q. Was that, you say a change in the job specifications,
so to speak?

A. Yes.

Q. A change for what?

A. Our original specifications were. . . ."

Each party to this appeal seemed to have momentarily
forgotten that at the time this testimony was offered, de-
fendant Heath was also engaged in the lawsuit. Heath was
entitled to introduce evidence relevant to its defense.

In our opinion the trial court ruled correctly by leaving
the testimony in the record as to Richmond Gas but not as to
the plaintiff. While there were no issues between Heath
and Richmond Gas, in the classic sense, there were undecided
questions as to Heath's liability to the plaintiff.

Richmond Gas' first objection, to-wit:

"Object, Your Honor. Obviously improper at this time."
did not state grounds and therefore preserves no error.

Richmond's second objection was based upon the contention that there were no issues pending between the two defendants.

Appellee argues that the same evidence was admitted without objection during reading from the deposition of a Mr. Stevelberg, directing our attention to the following:

"Q. What type of survey were you doing in Richmond beginning April the 9th, 1968, for the Richmond Gas Company?

A. That was a more detailed survey than just an F.I. I'm not sure. I think it started when I got there. I was doing a different type survey.

Q. In what respect was it different?

A. We were verifying every leak.

\* \* \*

Q. Did you ever see a copy of a contract regarding a survey after the explosion that the Heath Company was doing for the gas company, supposed to be different in some ways from the survey that Heath was doing for the gas company before the explosion?

A. No, actual contract, no.

Q. Did you ever see a work sheet or a work order from the Heath Company to you or to Mr. Moore that the work that Heath was to do for the Gas Company after the explosion was in any way different than the work order before the explosion?

A. I didn't see any paper work of the contract itself.

Q. Where did you get this information about some different kind of a survey after the explosion than Heath was doing for the Gas Company before the explosion?

A. Ron Moore told me."

\* \* \*

And on cross-examination:

\* \* \*

"Q. Mr. Stevelberg, you say that the survey on and after April the 9th was different in that you would verify every leak. Is that correct?

A. Yes.

\* \* \*

Q. What was your understanding as to who decided initially to make this change in this type of survey that

was to be done? Was it Heath's decision or Richmond Gas Company's decision?

A. Richmond Gas's decision, to the best of my knowledge.

\* \* \*

Q. You say that it is your understanding it was the Gas Company that requested a different type of survey?

A. Yes."

The law is well settled that any error in the admission of evidence is harmless and not reversible if the same or similar evidence has been admitted without objection. *Terre Haute, etc., R. Co.* v. *Weddle* (1915), 183 Ind. 305, 108 N.E. 225; *Stamets* v. *Wilson* (1928), 89 Ind. App. 403, 164 N.E. 300 and *Howard* v. *Merker* (1920), 73 Ind. App. 400, 127 N.E. 807.

In *Howard* v. *Merker, supra,* the court said:

"It is also claimed that the trial court erred in the admission of certain other evidence; but, whether this evidence was properly admitted or not, the error, if any, is not available, for the reason that other uncontradicted evidence of the same character and to the same effect was introduced without objection. *Polk* v. *Haworth* (1911), 48 Ind. App. 32, 95 N.E. 332."

4

(b)

As its second part of issue 4 Richmond objects to additional testimony of the witness Joseph Whitecavage and sets forth the following portion of the record in its brief:

"DIRECT EXAMINATION RESUMED BY HON. FLOYD BURNS, COUNSEL FOR HEATH SURVEY:

Q. This matter of one hundred per cent confirmation is what I am talking about now. When was the first time that you discussed that general subject with representatives of Richmond Gas?

A. In spring of 1967.

Q. And what resulted from that conversation?

OBJECTION, HON. R. STANLEY LAWTON, COUNSEL FOR RICHMOND GAS:

This calls for a conclusion.

Q. Tell what happened after the conversation?

A. We continued the program as we had done in the past.

Q. No change was made?

A. No change.

Q. Now, following that did you have any further contact with representatives of the Richmond Gas Company?

A. Yes.

Q. And with whom?

A. I contacted Walter Upping, Mr. Lindberg, Bill Misner.

Q. About what?

A. I was trying to get a program of pin-pointing gas leaks established.

Q. Whom, to your knowledge at that time was doing the pin-pointing for Richmond Gas Corporation?

A. Uh, Miller Pipe Line Corporation.

Q. And did Heath Survey Consultants offer the same type of service to-wit: pin-pointing?

A. Yes.

Q. And did you offer that to Richmond Gas?

A. Yes.

Q. What happened?

A. They didn't feel it was necessary. Miller Pipe Line was doing it already."

Richmond Gas argues that it had a continuing objection to the above line of questioning, pointing to the following:

"OBJECTION: R. STANLEY LAWTON, COUNSEL FOR RICHMOND GAS:

If the Court please, I think we are going to object on this as to remoteness and hearsay, and so on. I don't think this is a proper area of his examination."

We are unable to construe the above as a continuing objection. Moreover, we have carefully examined the record and are unable to find any such reservation.

Reeves contends that the same evidence received from Whitecavage was previously testified to by witness Ronald Moore without any objection by Richmond Gas and quotes the following from Moore's testimony:

"Q. Did you have an occasion at any time, while these surveys was going on to discuss that fact, which you

just stated, with representatives of the Richmond Gas Corporation?

A. Yes, sir. With Mr. Upping.

Q. And when was that?

A. This was in February.

Q. What year?

A. This was in 1967.

Q. Tell the Jury how this was done?

A. We had done a street survey with the flame ionization unit, and Mr. Upping was having some difficulty following up the leaks that we had turned in. And he was wanting to know why we turned in some leaks that they couldn't find. And I explained to him the difference in the sensitivity in these two pieces of equipment, as well as not confirming all of our leaks."

Richmond argues that at the time Moore testified "there was an issue pending between Reeves and Heath", and therefore Moore's testimony was not objectionable. It is argued, however, that the testimony of Whitecavage was objectionable because there were no issues pending between Richmond Gas and Heath at that time.

We are unable to fathom this argument. When Whitecavage was on the stand the issues between Reeves and Heath were still very much in contention, and Heath was entitled to explain and corroborate Ron Moore's testimony as a part of its defense.

Again, there was no error in admitting the evidence since virtually the same evidence had already been admitted without objection. *Terre Haute, etc., R. Co.* v. *Weddle, supra,* and *Stamets* v. *Wilson, supra.*

We therefore hold that the testimony of Whitecavage, objected to by Richmond, was properly admitted by the court and no prejudicial error resulted therefrom.

## ISSUE 5.

Richmond Gas next contends that the trial court erred in permitting defendant Marting Arms, Inc., to read into evi-

dence portions of a deposition containing certain opinions as to the cause of the explosion.

The deposition in question was that of expert witness Marvin Salzenstein. Those portions to which Richmond Gas objected, as preserved in its brief, are as follows:

"Q. From your investigation on this matter, did you arrive at any conclusions as to the origin and cause of the explosion, as was your assignment?

A. Yes, I did.

Q. What was that, sir?

A. That the explosion was a result of gas accumulation.

\* \* \*

Q. When you said that you were of the opinion that this explosion was a result of a gas accumulation, did your opinion also include an opinion as to where that gas accumulation was first ignited?

A. Yes, I did consider that.

Q. And where in your opinion was it first ignited?

A. I have heard of conflicting stories as to whether it initiated at Vigran's or at Marting Arms, and you may take your choice; whichever witnesses say it came from Marting Arms, then I would put the gas there when it first ignited. If it was at Vigran's I would put the gas at that point.

Q. In other words, you are saying that the ignition point is of no real significance to you from the gas explosion, whether it was in Vigran's or Marting Arms?

A. No, I am not saying that. All I am saying is based upon what the witnesses saw, if, indeed, it was at Vigran's first and the flames were seen coming out of there first along with the initial blast, then the ignition of accumulated gas occurred there. Otherwise, if it was at Marting Arms, then it holds equally true. Natural gas accumulated in the basement."

Richmond Gas objected to the reading of the above portions of the deposition on two grounds. First, it is argued that an examination of the deposition reveals that Salzenstein employed hearsay information in forming his opinion and that therefore, it is inadmissible under the rules of evidence.

With respect to this contention, we must conclude that any error in the admission of the expert's opinion was harmless.

The substance of the expert's opinion was that the explosion was a result of gas accumulation. This opinion had been previously admitted when Richmond Gas read into evidence another portion of this same expert's deposition. The following appears within that portion:

> "Q. . . . Do you based upon all the above and upon your education, experience, and training have an opinion based upon a reasonable degree of scientific certainty as to the cause of the explosion-fire of April 6, 1968, at South Sixth Street and East Main Street in Richmond, Indiana?
> A. Yes, I do.
> Q. What is that opinion?
> A. Well, an accumulation of natural gas with subsequent ignition in either or both Vigrans and Marting Arms."

There can be no reversible error in the admission of testimony when substantially the same testimony has been previously admitted without objection. *Stamets* v. *Wilson, supra; Terre Haute, etc., R. Co.* v. *Weddle, supra; Harter* v. *Brindle* (1969), 145 Ind. App. 411, 251 N.E.2d 590.

Richmond Gas secondly contends that the opinions contained in those portions objected to were inadmissible since they were not given in response to proper hypothetical questioning.

Trial Rule 32(D)(3)(b) reads as follows:

> "Errors and irregularities occurring at the oral examination in the manner of taking the deposition, *in the form of the questions or answers,* in the oath or affirmation, or in the conduct of parties and errors of any kind which might be obviated, removed, or cured if promptly presented, are waived unless seasonable objection thereto is made at the taking of the deposition." (Our emphasis.)

Since it made no objection when the deposition was taken, Richmond Gas waived any error arising from the failure to examine the expert witness in the proper hypothetical form.

We therefore must conclude that the trial court did not commit reversible error in allowing defendant Marting Arms, Inc., to read into evidence those portions of expert witness Salzenstein's deposition to which Richmond Gas objected.

## ISSUE 6.

Court's Final Instruction No. 1 read in part as follows:
"The Plaintiff has the burden of proving one or more of the following propositions:
First: That the defendant, Richmond Gas Corporation, was negligent in one or more of the following particulars:

* * *

(g) failed to protect its gas distribution piping from rusting and corroding although it had notice of the soil conditions in downtown Richmond, Indiana, being conducive to rusting and corroding underground gas pipe."

* * *

At the close of Reeves' case, Richmond Gas moved for withdrawal of the theory of negligence contained in specification (g) from the jury's consideration on the grounds that no competent evidence had been introduced to support the theory. Objection was later made to court's Final Instruction No. 1 which submitted the theory to the jury.

It is clearly error for the trial court to refuse to withdraw from submission to the jury a theory of negligence upon which there has been a complete lack of evidence introduced at trial. *Lamb* v. *York* (1969), 252 Ind. 252, 247 N.E.2d 197; *Tribune-Star Publ. Co.* v. *Fortwendle* (1953), 124 Ind. App. 618, 115 N.E.2d 215. However, if there is any evidence from which reasonable inferences can be drawn tending to support the theory, there is a question of fact which the jury must decide. *Wallace* v. *Doan* (1973), 155 Ind. App. 316, 292 N.E.2d 820; *Lamb* v. *York, supra.*

Richmond Gas contends that no competent evidence was introduced from which it could be established or reasonably inferred that soil conditions in downtown Richmond were con-

ducive to rusting and corroding gas pipe or that Richmond Gas had notice of any such conditions. With this contention, we cannot agree.

Plaintiff's witness Albert Moore, an employee of Richmond Gas, testified that the gas company installed steel pipe wrapped with a protective coating to prevent rusting. When it was necessary to remove part of this coating during installation, employees were required to reapply another type of protective coating to prevent rusting.

Post-explosion excavation of the gas line running into Marting Arms revealed that upon installation, no protective coating had been re-applied where the original coating had been removed from a short section of pipe. A large hole had rusted into this unprotected portion of the pipe. Plaintiff's witness Rolla Harger testified that a gas company official expressed extreme displeasure upon learning this fact and indicated that the protective coating should have been re-applied.

Moore's testimony also revealed that during the past thirty-four years of his employment he had removed bare pipes which had holes rusted in them.

From the above evidence, the jury could have reasonably inferred that Richmond Gas had notice of the fact that soil conditions in Richmond were conducive to rusting and corroding gas pipe.

## ISSUE 7.

Richmond Gas objected to the giving of final Instruction No. 20, which read:

"If you find that an accumulation of natural gas did explode in downtown Richmond on April 6, 1968 you are instructed that plaintiff need not prove the source of ignition."

and objected to the court's refusal to give its tendered Instruction No. 10, which read:

"If you find that an accumulation of gunpowder did explode in downtown Richmond on April 6, 1968 you are instructed that the source of ignition need not be proven."

The substance of Richmond Gas' objection is that in giving final Instruction No. 20, the court ignored the possibility that a gunpowder explosion could have been the source of ignition of the gas and that gas may not have been a substantial contributing factor to any resultant damages. The apparent conclusion toward which appellant seems to be arguing is that under Instruction No. 20, Reeves could possibly recover against the gas company even though its negligence was not the proximate cause of the death. However, when this instruction is construed with the court's instructions on proximate cause, it is clear that such a result could not obtain.

Final Instruction No. 1 informed the jury that it could not return a verdict against a defendant unless Reeves proved that the death was a direct or proximate result of a negligent act or omission on the part of that defendant.

The court then defined "proximate cause" in final Instruction No. 8 as follows:

"The term 'proximate cause' means that cause which, in natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury [damage] complained of and without which the result would not have occurred."

Further, final Instruction No. 9 read in part as follows:

"If you find from a consideration of all the evidence that the death of Blaine Scott Reeves was proximately caused by any defendant or defendants and that another defendant or defendants, though negligent did not proximately cause or contribute to cause his death, then plaintiff is not entitled to recover from such defendant or defendants whose negligence did not proximately cause or contribute to cause his death."

Given the foregoing instructions it is clear that the jury could not have properly returned a verdict against Richmond Gas had gas not been a substantial contributing

factor to any resultant damages. Indeed, Reeves had the burden of proving that the gas company's negligence proximately caused or contributed to the death.

Court's final Instruction No. 20, to which Richmond Gas objects, is a correct statement of the law in this jurisdiction. In *Huntington Light & Fuel Co.* v. *Beaver* (1905), 37 Ind. App. 4, 73 N.E. 1002, this court said:

"It is argued that the answers of the jury that there was no evidence as to who ignited the gas, or how it was ignited, excludes every condition authorizing a recovery. But the fact of the explosion is not controverted. Nor do the findings show that appellee had anything to do with igniting the gas. If appellant's negligence in permitting the gas to continue escaping into the building was present and active at the time the accident happended—and if construing the complaint we have held that it was—and the gas was neither ignited by appellee, nor became ignited through any fault of his, the agency through which it did become ignited is not of controlling importance. It is true that natural gas will not spontaneously explode, but in this instance it did explode; and, if the explosion was impossible without some agency acting upon the leaking gas, then some agency did act upon it, and the jury's answer can mean nothing more than that the evidence did not disclose what this agency was."

See also, *City of Indianapolis, etc.* v. *Walker et al.* (1960), 132 Ind. App. 283, 168 N.E.2d 228; *Public Service Co. of Ind.* v. *Dalbey* (1949), 119 Ind. App. 405, 85 N.E.2d 368.

Instruction No. 20 merely stated the principle that the plaintiff need not prove the source of ignition *if it was proved that the explosion was in fact a gas explosion.* It did not thereby relieve the plaintiff of proving that the death was a direct or proximate result of the gas company's negligence.

In this connection, it should be noted that Richmond Gas could not be relieved of liability for the negligent accumulation of gas because of the concurrent negligence of a third party. *City of Indianapolis, etc.* v. *Walker, et al., supra; Logansport, etc., Gas Co.* v. *Coate* (1902), 29 Ind. App. 299, 64 N.E. 638.

Richmond Gas was not prejudiced by the court's refusal to give tendered Instruction No. 10. Its absence in no way lessened Reeves' burden of proving, as a condition precedent to recovery against the gas company, that its negligence proximately caused or contributed to the death.

## ISSUE 8.

Richmond Gas next contends that the trial court erred in refusing to give its tendered Instruction No. 3, concerning its standard of care, which read:

"The Defendant Gas Company is not required to insure that none of its gas escapes from its facilities. It is only required to use ordinary care in the conduct of its business, and specifically in respect to those acts which have been charged against it as negligence by the Plaintiffs. This is still true even though I have told you natural gas is a dangerous and explosive substance. You are not permitted to impose any higher standard of care on the Defendant than ordinary care."

The above tendered instruction was substantially covered by court's final Instruction No. 22, which read:

"You are instructed that natural gas is a highly inflammable and explosive substance.

You are further instructed that it was the duty of Richmond Gas Corporation to exercise ordinary care in operating its mains and service lines so as to prevent the escape of gas therefrom in such quantities as to become dangerous to life and property.

The Defendant Gas Company is not required to insure that none of its gas escapes from its facilities."

Richmond Gas does not argue that final Instruction No. 22 is an incorrect statement of the law. In fact, there is no substantial difference between the two instructions. Rather, it is argued that due to a difference in thrust and emphasis between the two, tendered Instruction No. 3 is a more appropriate statement of the law with respect to the issues in the case.

Refusal to give a tendered instruction is not grounds for reversal where its subject matter is adequately covered by other instructions. *Ashton* v. *Anderson* (1972), 258 Ind. 51, 279 N.E.2d 210; *Lamb* v. *York* (1969), 252 Ind. 252, 247 N.E.2d 197; *Booher* v. *Alhom* (1973), 156 Ind. App. 192, 295 N.E.2d 841. Moreover, this is true even where a refused instruction appears more appropriate than the one given. *Leppert Bus Lines, Inc.* v. *Rayborn* (1962), 133 Ind. App. 325, 182 N.E.2d 260.

## ISSUE 9.

Richmond Gas next contends that the trial court erred in refusing to give its tendered Instruction No. 5, which read:

"You are instructed that any award made to plaintiffs as damages in this case, if any is made, is not subject to federal or state income tax, and you should not consider such taxes in fixing the amount of any award made to the plaintiffs."

In support of its contention, Richmond Gas argues that most jurists are unaware of tax exemptions on awards in this type of case and that a jury may therefore inflate a verdict in anticipation of tax liability.

While Richmond Gas cites cases from several jurisdictions holding that such an instruction is proper, a review of the authorities reveals a fairly even split in opinion on this issue. See, 63 A.L.R. 2d 1393-1425.

The trial court's ruling on the instruction was in accordance with the law in Indiana.

In *Highshew* v. *Kushto* (1956), 235 Ind. 505, 134 N.E.2d 555, our Supreme Court, in holding that such an instruction was improper, said:

"Inquiries at a trial into the incidents of taxation in damage suits of the character we have here, would open up broad and new matters not pertinent to the issues involved. Such subject matter would involve intricate instructions on tax and non-tax liabilities with all the regulations pertinent

thereto. No court could, with any certainty, properly instruct a jury without a tax expert at its side. In our judgment such matters are not a proper subject for instruction or argument of counsel."

We therefore hold that the court did not err in refusing to give Richmond Gas' tendered Instruction No. 5.

## ISSUE 10.

Richmond Gas next contends that the trial court erred in instructing the jury on the measure of damages as follows:

"If you find from a fair preponderance of the evidence and under the instructions of the Court that the plaintiff is entitled to recover you should determine the amount of the damages which have been sustained by the decedent's wife, Barbara Reeves, and his minor children, on whose behalf the action is brought for the pecuniary losses which they have sustained by the death of Blaine Scott Reeves. In determining the amount of the damages, you may take into consideration the age of the deceased, his health and his normal life expectancy. The evidence in this case is that the normal life expectancy of an average 27 year old male is 50.31 years. You may also consider the disposition and habits of the deceased, as shown by the evidence, as to whether he was temperate, industrious and frugal or otherwise; his occupation, opportunities and earning capacity; the funeral expenses; the amount of money or other things of value furnished by the deceased to his wife and minor children, or the reasonable value of what the deceased's wife and minor children, during the children's minority, may have received during the lifetime of the deceased, had he lived. You may also consider the reasonable value of the loss of care, love and affection sustained by the dedecedent's wife, Barbara Reeves, and the reasonable value of the loss of care, love and affection, and loss of parental training and guidance sustained by the decedent's minor children, during their minority.

From a consideration of all the elements above ascertained, as shown by the evidence, you may assess the damage for the death of Blaine Scott Reeves at such sum as will fairly and fully compensate Barbara Reeves and the minor children on whose behalf this action is brought for the pecuniary loss caused by the death of their husband and father." (Final Instruction No. 27.)

Richmond Gas first argues that the instruction does not limit available damages to actual pecuniary loss, and attempts to bolster its argument by pointing to four places where the word "value" stands without direct modification of the adjective "pecuniary". However, this construction results only from a hypertechnical dissection of the instruction ignoring the introductory and concluding sentences which specifically state that the action is being brought for the "pecuniary loss" caused by the death. A reasonable and logical construction compels the conclusion that the word "value" is being used in a pecuniary sense.

Richmond Gas next contends that the instruction is erroneous in that it permits recovery for that which the decedent's wife and children *"may have received* during the lifetime of the deceased had he lived" rather than for that which they could *"reasonably have expected to receive* had the decedent lived." Appellant fears that the language employed in the instruction allows the jury to engage in speculation and conjecture in arriving at its determination.

In *Ohio and Mississippi Ry. Co.* v. *Voight* (1890), 122 Ind. 288, 23 N.E. 774, an action for wrongful death brought by the administrator of the decedent's estate, error was alleged in instructing the jury that it could assess as damages

". . . a sum equal to the amount the deceased *might* have earned, as shown by the evidence, not to exceed the sum of $10,000 during the period of his life, in which he would have probably earned money, deducting therefrom the reasonable cost of his own support, and making a fair deduction for their present payment of said sum."

The appellant argued that the amount of recovery should have been determined not by what the deceased *might* have earned, but rather by what he probably *would* have earned considering his habits of industry, occupation, opportunities for employment, health, prospects of life, etc. Our Supreme Court agreed with this contention but held that the instruc-

tion in question was not erroneous when construed with another instruction on the subject of damages which read:

". . . in determining these matters (the damages to be assessed) you should be governed, also, by ordinary human knowledge and experience as to age at which he would likely have remained capable of labor, or doing business, considering the evidence concerning his health, his habits of sobriety, industry, and personal merits and demerits, as shown by the evidence."

Likewise, in the case at bar, the phrase in the instruction permitting recovery for that which the decedent's wife and children *"may have received* during the lifetime of the deceased had he lived," is not erroneous when construed with the following language contained in the same instruction:

"In determining the amount of the damages, you may take into consideration the age of the deceased, his health and his normal life expectancy. The evidence in this case is that the normal life expectancy of an average 27 year old male is 50.31 years. You may also consider the disposition and habits of the deceased, as shown by the evidence, as to whether he was temperate, industrious and frugal or otherwise; his occupation, opportunities and earning capacity . . ."

Here again, Richmond Gas has dissected the instruction on damages in such a manner as to reach an interpretation which does not necessarily result when the instruction is read in its entirety.

The remaining cases cited with respect to the above contention do not speak to this issue and do not support appellant's argument that the damage instruction in the case at bar is erroneous.

Richmond Gas next maintains that the damage instruction is erroneous because it fails to instruct the jury, in determining the size of the verdict, to consider the possibility that the decedent's wife and children could die prematurely. We find no Indiana authority which would entitle appellant to such an instruction. Moreover, consideration of this con-

tingency would require the jury to speculate on matters which are not in evidence.

Richmond Gas next argues that the damage instruction was erroneous in permitting the jury to consider ". . . the reasonable value of the loss of care, love and affection sustained by the decedent's wife . . . and the reasonable value of loss of care, love and affection, and loss of parental training and guidance sustained by the decedent's minor children, during their minority."

In *American Carloading Corp.* v. *Gary Tr. & Sav. Bk., Admr.* (1940), 216 Ind. 649, 25 N.E.2d 777, an action for the wrongful death of a married woman, our Supreme Court held:

> "The deprivation of the husband and children of her care, love, and affection, and training and guidance of the children are elements of damage to be considered by the jury in arriving at a verdict."

Although Richmond Gas challenges the authority upon which our Supreme Court reached this holding, the principle is expressed in plain and unambiguous language. This language was later approved by this court in *New York Central R. R. Co.* v. *Wyatt, Admrx.* (1962), 135 Ind. App. 205, 184 N.E.2d 657. Loss of love and affection were recently recognized as proper elements for recovery in wrongful death actions in *State* v. *Daley* (1972), 153 Ind. App. 330, 287 N.E.2d 552. The trial court did not err in instructing the jury accordingly.

Richmond Gas further argues that if loss of care, love and affection, and parental training and guidance, are found to be proper elements for consideration in assessing damages, the instruction is yet erroneous for failing to expressly limit recovery to loss of "acts" thereof. It is urgently insisted that in the absence of this word, the jury is permitted to unduly speculate in determining the amount of damages. This argument seems at best an exercise in semantics.

The language employed in the instruction is straightforward and in conformity with the holding in *American Carloading Corp., supra.*

Richmond Gas next contends that the trial court's instruction on damages is erroneous because it fails to instruct the jury as follows:

> "It is the law, however, that you are not permitted to assess what are known as punitive damages or damages in the nature of a punishment against any defendant. Nor can you include any damages whatsoever for any grief or sorrow on the part of the widow or children on account of the death of the deceased. Likewise you should not permit yourself to be influenced in any way by the size of the demand made by the plaintiffs." (Defendant's tendered Instruction No. 1.)

Appellant directs our attention to various circumstances surrounding the trial of this case in an effort to convince us that the jury should have been instructed that they were not permitted to award damages in the nature of a punishment against any defendant. Reeves, on the other hand, argues that the requested instruction was improper since there was no issue at trial concerning punitive damages. In this same vein, Richmond Gas argues that the jury should have been cautioned against considering any grief or sorrow suffered by the decedent's wife and children or consider the size of the demand made by the plaintiff in arriving at any determination of damages.

While our attention is directed to cases wherein similar precautionary instructions were in fact given to the jury, we are not presented with, nor do we find, any authority holding that it is error to refuse such an instruction. In our opinion, the jury was adequately instructed on the measure of damages. Final Instruction No. 27 specifically states that Reeves' action is brought to recover the "pecuniary loss" sustained as a result of the death and delineates those elements which may be considered in assessing that loss. In addition, Final Instruction No. 18 cautioned the jury as follows:

"I instruct you that in your deliberations, you should not be governed in any respect by passion, prejudice or sympathy; nor are you to be influenced by the fact that plaintiffs are natural persons and the defendants are corporations."

We therefore hold that the trial court did not err in giving Final Instruction No. 27 over appellant's objection. Further, there was no error in refusing Richmond Gas' tendered Instruction No. 1 since the jury was fairly and adequately instructed on the measure of damages through the instruction given.

## ISSUE 11.

Richmond Gas finally argues that the jury's verdict of $250,000.00 was excessive.

In *Bonek* v. *Plain* (1972), 153 Ind. App. 516, 288 N.E.2d 185, this court quoted the frequently cited test for reviewing damages on appeal.

". . . The general rule of law applicable which has been the one recognized for over a hundred years, is to be found in the case of Coleman v. Southwick (1812), 9 Johns N. Y., 45, 6 Am. Dec. 253, 254, wherein Chancellor Kent stated:

'It is not enough to say, that in the opinion of the court, the damages are too high and that we would have given much less. It is the judgment of the jury, and not the judgment of the court, which is to assess the damages in actions for personal torts and injuries . . . The damages therefore, must be so excessive as to strike mankind, at first blush, as being beyond all measure, unreasonable and outrageous, and such as manifestly show the jury to have been actuated by passion, partiality, prejudice, or corruption. In short, the damages must be flagrantly outrageous and extravagant, or the court cannot undertake to draw the line, for they have not standards by which to ascertain the excess.' "

See also, *State* v. *Daley, supra; Northern Indiana Public Service Co.* v. *Otis* (1969), 145 Ind. App. 159, 250 N.E.2d 378; *Allison* v. *Boles* (1967), 141 Ind. App. 592, 230 N.E. 2d 784.

In affirming an award of $400,000 in an action for wrongful death, this court held in *State* v. *Daley, supra:*

"In order to justify a reversal on grounds of excessive damages, the amount of damages assessed must appear to be so outrageous as to impress the court as being motivated by passion, prejudice and partiality. New York Central Railroad Co. v. Johnson, *supra;* Northern Indiana Public Service Co. v. Otis, *supra;* Hines v. Nichols (1921), 76 Ind. App. 445, 130 N.E. 140; City of Evansville v. Rinehart (1968), 142 Ind. App. 164, 233 N.E. 2d 495.

"Reversal is not justified, however, if the amount of damages awarded is within the scope of the evidence before the court. Northern Indiana Public Service Co. v. Otis, *supra;* First Bank & Trust Co. of South Bend v. Tellson (1954), 124 Ind. App. 478, 118 N.E.2d 496."

An examination of the evidence, with those inferences most favorable to Reeves, reveals that at the time of his death the deceased was twenty-six years old and was earning approximately $120.00 per week. Surviving were his wife and four minor children, the youngest of whom was six days old at the time of death.

Actuary, John Cato, testified that the projected earnings of a twenty-six year old male making $120.00 per week computed with a two percent annual wage increase would amount to $533,476.00.

In arguing that the verdict was excessive, Richmond Gas ignores the fact that, within their zone of discretion, the jury may consider such factors as general inflation and the constant depreciation and cheapening of money when assessing damages. *State* v. *Daley, supra.* Also, Richmond Gas fails to recognize that in addition to loss of earnings, the jury is entitled to award damages for loss of intangibles such as love and affection. The assessment of these damages is committed to the sound discretion of the trier of facts. *State* v. *Daley, supra.*

We are unable to conclude that the amount of damages

awarded is not within the scope of the evidence nor does the amount appear outrageous or extravagant as to indicate that the jury was motivated by passion, prejudice or partiality.

Finding no reversible error in the trial proceedings, judgment is hereby affirmed.

Robertson, P.J. and Lowdermilk, J., concur.

NOTE.—Reported at 302 N.E.2d 795.